**Margaret Ann CLINE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 66–1219.**

United States District Court
S. D. Florida.

July 7, 1967.

Richard Leslie, of Shutts & Bowen, Miami, Fla., for plaintiff.

James Matthews, Asst. U. S. Atty., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

FULTON, Chief Judge.

This action was brought by Margaret Ann Cline under the Federal Tort Claims Act. She seeks to recover damages which she claims to have sustained when her automobile was struck by a United States mail truck, which was then being operated by an employee of the Government. The accident occurred on November 13, 1964 on a main east-west thoroughfare in the City of Fort Lauderdale, Florida.

Prior to trial the Government admitted negligence by the driver of the mail truck, and admitted that the said driver was, at the time of the accident, acting within the scope of his employment by the Government. Thus, the issues at trial were limited to the nature and extent of Plaintiff's damages and whether such damages proximately resulted from the negligent operation of the mail truck.

This case was tried to the Court on March 14, 1967. The testimony was reported and a transcript thereof is on file with the Clerk of this Court. Thereupon, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. The Plaintiff was alone in her Buick automobile, momentarily parked, waiting for the traffic in front of her to move forward. At this moment, the mail truck which was then proceeding in the opposite direction crossed the median which separated the traffic lanes of the thoroughfare and struck the left front of Plaintiff's automobile a rather violent blow.

2. The mail truck was moving at the rate of approximately twenty miles per hour immediately prior to the impact; the Plaintiff's Buick automobile was damaged to the extent of $283.36. There is no evidence as to the nature and extent of damage to the mail truck.

3. Immediately after the impact Plaintiff experienced pain in her back which radiated down into her leg, a pain which she described as one of the most intense pains in her experience. She testified that the pain was so severe that she was briefly in a state of semi-paralysis; and that she could not move or even breathe for a moment or two; and that her legs were so weak that she was then unable to stand or drive her automobile. However, after sitting in her automobile for awhile, with a policeman in attendance, she was able, with some difficulty, to drive her automobile from the scene of the accident to her home.

4. Within the hour following the accident the Plaintiff went to the office of a physician, Dr. Simon, who specializes in orthopedics. He is a graduate of Harvard Medical School and is Board certified in his specialty.

5. For several years prior to this accident Dr. Simon had seen the Plaintiff professionally for a variety of complaints, none of which have any real significance here. In addition to administering to the Plaintiff professionally, Dr. Simon and his wife were socially acquainted with the Plaintiff and her husband. The Plaintiff and Mrs. Simon were what the Plaintiff described as "shopping and golfing buddies."

6. The examination of the Plaintiff by Dr. Simon, soon after the accident, revealed subjective symptoms of pain with movement, diminution of the right angle jerk, and an absence of sensation over the right foot and ankle in the region of the calf. X-rays which were then taken were negative. The doctor prescribed hot tub baths, certain exercises and medication for pain. Thereafter, for a period, the Plaintiff appeared to be recovering uneventfully.

7. Dr. Simon again saw the Plaintiff professionally on January 24, 1965 and on April 25, 1965. When he saw her in April her condition had worsened. She complained of pain in her right hip; she had an obvious limp; there was a diminution in her right knee jerk; she had less reflex in the right ankle; there was less sensation in her right lateral thigh; her hip rotary muscles were weaker; and, percussion over a certain vertebra in her spine produced pain which radiated into her right posterior hip.

8. When Dr. Simon examined the Plaintiff in April he made a diagnosis of a ruptured intervertebral disc, and he referred her to a neurosurgeon for consultation, where Dr. Simon's diagnosis was confirmed.

9. During the period between April of 1965 and November of 1966 Plaintiff's back and leg condition worsened. She was intermittently committed to bed rest and underwent periods of traction and physical therapy. During this period she occasionally saw an osteopath who gently massaged and manipulated the injured area. Although Dr. Simon had suggested surgery in April of 1965, the Plaintiff was unwilling to submit thereto.

10. During November of 1966, Dr. Simon again saw her professionally. Although she had intermittently experienced certain remissions from the pain and disability during the period between April of 1965 and November of 1966, the testimony shows that during that period she became progressively worse. Dr. Simon testified that in November 1966, and at the time of trial, she suffered a disability of fifteen to twenty percent of her body as a whole as a result of her spinal injury.

11. The Plaintiff testified and the proof shows that since this accident her physical activity has been radically curtailed. Prior to this accident she was able to play eighteen holes of golf several times a week, ride horseback, perform all of her household duties, drive her own automobile and otherwise lead a normal life. However, at the time of trial, and for some time prior thereto, she was unable to do any of these things, except with great difficulty and upon a very limited basis.

12. The evidence shows that prior to this accident the Plaintiff had from time to time suffered various physical infirmities. She has a history of a stomach ulcer and of a hiatal hernia, both of which continue to bother her some from time to time. It was also proven that in 1961 she fell from a kitchen stool and fractured her sacrum; and that in 1966 she had temporary discomfort in her neck. However, none of these conditions were shown by the evidence to have any material bearing upon her claim of injuries and disability, resulting from the collision with the mail truck.

13. Although Dr. Simon has seen the Plaintiff as a patient in the office only five times, it is uncontradicted that he advised with her about her condition over the telephone at her home, in his home, and at other places frequently, perhaps as many as one hundred times. The evidence shows that she has in fact been under Dr. Simon's general supervision and care continuously since the mail truck collision.

14. Since April or May of 1965, Dr. Simon has from time to time recommended surgery to the Plaintiff. At the trial he testified that if she did submit to surgery she may expect a good result. It is his opinion that after surgical intervention, she would have little or no disability, not more than five percent of the body as a whole. Although Dr. Simon testified that he had never operated upon a patient for a disc repair who was worse after the operation than before, he knew of cases where patients are not helped by the operation, but were worse thereafter.

15. The Plaintiff testified that during the three or four months next preceding the trial her pain and discomfort had sharply increased. No useful purpose will be served by here detailing all of the complaints which she described in her testimony. She pictured herself to

be an almost semi-invalid. The Court finds her testimony to be credible.

16. At the trial the Plaintiff testified that as a result of the recent increase in the pain and discomfort, that she is now ready, or almost ready, to submit to surgery.

17. Dr. Simon testified that a surgical operation for the repair of her spine would cost approximately $2,500, which sum would include the surgical fees and the hospital and nursing expense.

18. The evidence in this case shows that the Plaintiff has expended the following sums for the following purposes, all of which expenditures are reasonable and each of which was proximately caused by the mail truck collision which occurred November 13, 1964:

| | | |
|---|---|---:|
| a. | Repair of Plaintiff's automobile | $ 283.86 |
| b. | Dr. Simon | 220.00 |
| c. | Dr. Bell (Physical Therapist) | 28.00 |
| d. | Dr. Woolsey (Neurosurgeon) | 75.00 |
| e. | Dr. Panakos (Osteopath) | 78.00 |
| f. | Mrs. C. D. Cline (Nursing Care) | 164.08 |
| g. | Health Studios (Massages) | 15.00 |
| h. | Dr. Smith | 137.00 |
| i. | Lauderdale Medical Supply | 5.26 |
| | TOTAL | $1,006.20 |

19. The evidence shows that as a result of the Plaintiff being physically unable to perform her regular household duties, it was necessary for her to employ extra household help for a period of approximately one year at an expense of $1,000.

20. At the time of trial the Plaintiff was fifty-five years of age. The mortality tables which were received in evidence indicated that her then life expectancy was 19.71 years.

CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties to and the subject matter of this cause.

2. The expense items which are set out in this Court's Finding of Fact No. 18 were proximately caused by the negligent operation of the mail truck and each item thereof was reasonably and necessarily incurred by the Plaintiff. The Plaintiff is entitled to recover of and from the Defendant the total sum thereof, in the amount of $1,006.20, for out-of-pocket expenses.

3. In addition to the recovery of her out-of-pocket expenses, the Plaintiff is entitled to be reasonably compensated for such pain and suffering, past and future, as has proximately resulted from the negligence of Defendant's employee.

3a. This Court has experienced some difficulty in ascertaining the precise amount to which the Plaintiff is entitled as a result of her personal injuries. This difficulty results from the uncontradicted and believable testimony of Plaintiff's doctor to the effect that a surgical operation upon Plaintiff's spine may reasonably be expected to relieve her of her physical disability, except for a minimal degree not exceeding five percent of the body as a whole. Her physician also testified that although he had heard of similar operations which had been performed by other doctors where the patient was worse after the operation than before, that he had personally never had such untoward results with his own patients. The record does not disclose any detailed discussion between the Plaintiff and her doctor where-

in he advised her of any risks incident to the operation and as to what benefit she might expect as a result of the operation. However, the record does show that he advised her at various intervals after April 25, 1965, to submit to the operation, and as a trier of facts this Court can and does reasonably infer that while the Plaintiff and her doctor were discussing the operation he discussed with her the seriousness of it and the benefits which it could reasonably be expected to produce.

3b. The Court's difficulty with this aspect of this case may be better understood by reference to 22 Am.Jur.2d 67, ¶42, where the following discussion appears:

"A more difficult problem is presented in those cases in which an operation may minimize the damages resulting from an injury. Courts are understandably reluctant to compel an injured party to submit to an operation with all its attendant uncertainties and risks; on the other hand, when, in the opinion of medical experts, an operation will minimize a considerable portion of the injured person's damages, those same courts are also reluctant about requiring the defendant to pay damages based upon the assumption that the injured party will not submit to the operation. In solving this problem courts begin by applying the usual test—that is, that if a reasonably prudent man would have submitted (or would, in the future, submit) to the operation, then those damages which the operation would have alleviated are not recoverable. Courts agree that if the operation proposed is serious in that it is attended by risk of failure or death, damages will not be decreased or minimized by testimony related to the proposed operation. Therefore, the cost of a serious operation does not measure damages, and recovery is not limited to such cost. Conversely, courts also generally agree that if the operation involves only a slight inconvenience with small expense and if its probability of relieving the condition is high, those operations which are more serious than simply 'inconvenient' but which are less serious than 'attendant with risk of death'—are usually left to the jury to determine whether a reasonably prudent man would have submitted to the operation. The question is not affected by individual timidity or hypersensitiveness. However, the fact that the pain accompanying the operation will be great or that the operation will involve the injured party in unreasonable expense will be considered in determining whether the refusal to submit to the operation was reasonable under the circumstances of the case. And it has usually been held that submission to proper medical or surgical treatment by an injured plaintiff in order to minimize his damages does not require him to submit to an amputation—at least not as a matter of law."

The general principle of law that except in cases involving grave and severe operations one must follow the expert recommendation of physicians or otherwise be precluded from recovering damages which might thereby have been avoided is recognized by the Court of Appeals for the Third Circuit in the case of Murphy v. American Barge Line Co., 169 F.2d 61; and the application of the "reasonably prudent man rule" was recognized and applied by the Supreme Court of Florida in the case of Ballard and Ballard v. Pelaia, 73 So.2d 840, where the Florida court stated, "The rule seems to be that one will be required to submit to an operation only when a reasonably prudent man under the circumstances would do so."

3c. It is often said, obviously with some basis, that there is no such thing as simple surgery. There is, of course, some element of doubt and risk attendant upon each surgical operation. Whether an anticipated surgical operation involves grave and severe possibilities takes into account not only the nature of the opera-

tion but also the skill of the surgeon, the physical condition of the patient, the hospital and nursing facilities which are available, and other variables. With respect to the gravity and severity of surgery for the correction of Plaintiff's spinal injury the only evidence is the testimony of the Plaintiff's own physician, which is uncontradicted and believable, and whose testimony made the prescribed operation appear to be relatively safe and extremely desirable. Moreover, the Plaintiff testified in such a way as to lead the Court to believe that she was at the time of trial ready to submit to this operation, which had been prescribed by her doctor.

3d. This Court understands the unwillingness of the Plaintiff to submit to surgery for the repair of her disc during the period from April of 1965 to the date of trial, March 14, 1967. During that period she could reasonably have hoped that her condition would improve without surgery, and her refusal to be operated on during that period was not unreasonable. In view of all of the evidence in this case, the Court concludes that the surgical operation which has been prescribed for the Plaintiff by her doctor is not of such a grave and severe nature as to permit her to refuse the operation and at the same time recover damages from the Defendant for her continuing pain and suffering. This Court finds and concludes that a reasonably prudent person acting under the facts and circumstances which were developed by the trial of this case would submit to the operation which has been prescribed.

3e. This Court finds and concludes that the Plaintiff is entitled to fully recover compensatory damages for her pain and suffering, which proximately resulted from the negligence of Defendant's employee, from the date of the accident on November 13, 1964 until the day of trial on March 14, 1967, in the sum of $14,190.

3f. However, Plaintiff's recovery for her personal injuries for the period after March 14, 1967 must be limited to such recovery as she could claim if she submitted to the operation within a reasonable period after that date. This is true because it would be contrary to fairness and equity and the weight of judicial authority to permit the Plaintiff to continue her refusal of the prescribed operation and at the same time receive from the Defendant compensation for pain and suffering which the operation would substantially alleviate. Upon her claim for future pain and suffering, the Plaintiff will be permitted to recover for only such damages as would reasonably compensate her for such pain and suffering, physical and mental, as she would be reasonably expected to endure if she submitted to the prescribed operation within a reasonable time after March 14, 1967, taking into account that she would have a five percent disability of her body as a whole for the remainder of her life. Accordingly, Plaintiff is entitled to recover of and from the Defendant for her physical and mental pain and suffering for the period after March 14, 1967 the sum of $5,400. In addition thereto the Plaintiff shall also recover of and from the Defendant for medical, hospital, nursing and other expenses incident to the operation an additional sum of $2,500.

4. The parties have stipulated that the Court may exercise its discretion in awarding fees for Plaintiff's counsel. The Court finds and concludes that a fee in the amount of $4,819.24 is reasonable and proper.

5. Accordingly, Plaintiff is entitled to recover of and from the Defendant the total sum of $24,096.20, for the specific items as follows:

| | | |
|---|---|---|
| a. | Out-of-pocket expenses | $ 2,006.20 |
| b. | Compensatory damages from November 13, 1964 to March 14, 1967 | 14,190.00 |
| c. | Compensatory damages after March 14, 1967 | 5,400.00 |
| d. | Expenses incident to operation | 2,500.00 |
| | TOTAL | $24,096.20 |

Counsel for Plaintiff is allowed as a fee twenty percent of the above recovery, or $4,819.24.

6. This Court will enter a Final Judgment for the Plaintiff in accordance with these Findings of Fact and Conclusions of Law.