Jerry Joseph VERRETT, Plaintiff-Appellee, Cross-Appellant,

v.

McDONOUGH MARINE SERVICE, Defendant-Appellee,

BOUDREAUX TOWING COMPANY, INC., Defendant-Third-Party-Plaintiff-Appellee-Cross-Appellant,

v.

SUPERIOR OIL COMPANY, Third-Party-Defendant-Appellant, Cross-Appellee.

No. 82–3001.

United States Court of Appeals, Fifth Circuit.

May 31, 1983.

Liskow & Lewis, Robert W. Booksh, Jr., Charles M. Steen, Donald R. Abaunza, New Orleans, La., for third-party-defendant-appellant.

Kierr, Gainsburgh, Benjamin, Fallon & Lewis, Eldon E. Fallon, New Orleans, La., for Verrett.

Hebert, Abbott & Horack, Andre J. Mouledoux, New Orleans, La., Diaz & Cheramie, Carlton J. Cheramie, Golden Meadow, La., for Boudreaux Towing.

Before BROWN, GOLDBERG and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

In this personal injury action arising under the Jones Act, 46 U.S.C. § 688, and the General Maritime Law, appellant, Superior Oil Company (Superior), and cross-appellant, Boudreaux Towing Co. (Boudreaux), challenge the district court's finding of negligence on their parts, of no contributory negligence on the part of the plaintiff-appellee, Verrett, the district court's dismissal of their respective cross-claims for indemnity, and its assessment of the percentages of fault and of damages. In addition, Boudreaux contests the district court's denying it limitation of liability. Because we find that the decision of the district court, in all respects save its award of damages for future pain, is not clearly erroneous, we affirm and remand.

## I. *The Facts*

Superior owned certain production facilities in the Bayou Penchant field, located inshore, Louisiana. The field was positioned in a marshy area and linked by a series of navigable canals. At the end of each canal in the field there was a well with a walk-around platform which enabled the wells to be checked. The plaintiff, Jerry Joseph Verrett, was employed by Superior as a pumper. His duties required him to check routinely gauges, make recordings of temperature and flow rate and to perform required maintenance on oil or gas producing wells in the Bayou Penchant field by riding to each well in a company-owned vessel, the M/V MISS SUPERIOR 75.

Diamond M Drilling Company was drilling a well for Superior in the Bayou Penchant field. Superior was represented on the drilling by a Bull Durham, its employee.

Superior had contracted with Boudreaux to supply a tug and personnel to navigate that vessel. Pursuant to this arrangement, Boudreaux supplied the M/V ELAINE B, whose captain was Roy Matherne.

On December 22, 1977, the Diamond M rig had completed its drilling operations and was scheduled to be moved out of the field the next day. As a result, some of the barges providing support services for the drilling operation had to be moved. One of these was a pollution barge owned by McDonough Marine Service, Inc. which had been bareboat chartered to Superior. Durham requested that Matherne and his crew from the M/V ELAINE B remove the pollution barge so that he (Durham) could relocate the rig the following day.

The M/V ELAINE B removed the barge from the rig and placed it in the B–5 canal (the nearest canal to the drilling rig) by securing one end of the barge to a cypress tree on the right bank. The tug then came around and pushed the opposite end of the barge close to the right bank.

The pollution barge was 30 feet wide and 110 feet long, approximately half the width of the canal. On December 22, 1977, the monitoring board in a shack used as headquarters by Superior employees maintaining the field indicated a problem at one of the wells. Verrett, as one of two Superior employees in the shack, was responsible for checking the malfunctioning well. In the early morning hours of December 23, 1977, Verrett set out alone aboard the M/V MISS SUPERIOR 75 to locate and repair the malfunctioning well.

The M/V MISS SUPERIOR 75 was a small speedboat, equipped with running lights as well as a spotlight. Verrett, in navigating the MISS SUPERIOR, used only his running lights, not the spotlight. He began the inspection with the A–9 well located in the A–9 canal, then proceeded to check the B–5 well. As the M/V MISS SUPERIOR turned into the B–5 canal, it collided with the pollution barge which was blocking part of the canal near the entrance on the right side. The unsecured end of the barge had swung out to block about half of

the canal. It was in this collision, which occurred shortly after 2:00 a.m., that Mr. Verrett sustained the back injuries giving rise to this lawsuit.

## II. *The Appeal*

### A. *Superior's Negligence*

. Superior objects first to the district court's finding it negligent and that such negligence contributed to the collision. The district court found that Verrett was a seaman as a member of the crew of the MISS SUPERIOR. As such, it held that Verrett had a claim against his employer, Superior, under the Jones Act, 46 U.S.C. § 688. The court held that "Superior was under a duty to supervise plaintiff's work and, in so doing, to warn him of all impending dangers of which it was aware or should have been aware, being charged with the employee's lack of knowledge. A failure to satisfy this duty constitutes negligence." *Olsen v. States Line,* 378 F.2d 217, 221 (9th Cir.1967). The court reasoned that there was a duty on the part of Superior's employee, Bull Durham, to see that the pollution barge was moored safely, which included mooring it in a proper location and in a safe manner with respect to lights and lines. It held further that Durham was in a position of authority to have so instructed Boudreaux's captain, Matherne, and that Durham's failure to do so constituted negligence. On this basis, the court found that Superior's negligence in failing to see that the barge was properly moored or to notify Superior employees of its location contributed to the collision that ensued.

■ Findings of fact by the district court will not be disturbed unless clearly erroneous. F.R.Civ.P. 52(a); *see Chisholm v. Sabine Towing & Transportation Co.,* 679 F.2d 60 (5th Cir.1982); *Sebree v. United States,* 567 F.2d 292, 293–94 (5th Cir.1978). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364,

395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Ferrero v. United States,* 603 F.2d 510, 512 (5th Cir.1979). Measured by this standard, we hold that the district court's determination that Superior was negligent is not clearly erroneous.

■ Under the Jones Act, an employer has a duty to provide a safe place to work. This duty extends to areas over which the employer has control. *Broussard v. Marine Transport Lines, Inc.,* 369 F.Supp. 103, 105 (E.D.Tex.1974); *see also Vincent v. Harvey Well Service,* 441 F.2d 146 (5th Cir.1971). Contrary to the assertion of Superior in its brief that the district court did not base its finding of liability on the part of Superior on a failure to fulfill this duty, the court implicitly at least found that Superior's duty and control extended to mooring the barge in the B–5 canal. Because it failed to supervise the mooring of the barge, the court found Superior negligent.

■ Here, Durham was superintendent of the drilling operation and knew that the Superior pumpers, such as Verrett, would be traveling in the deadend canals at night. As such, Durham, Superior's employee, had a duty to warn Superior employees of the location of the barge.

■ The evidence also shows that Durham made no attempt to notify either the Superior production or drilling departments about the placement of the barge. Moreover, Durham did not ask Matherne in which canal the barge had been placed. Instead, Durham testified that the particular placement of the barge did not matter to him so long as the barge was out of his way. We hold that such actions clearly support the district court's finding that Superior violated its duty to provide a safe work place and that this failure to see that the barge was properly moored or to notify Superior employees of its location was a producing cause of Verrett's injury. Under the Jones Act, that is sufficient for a finding of negligence. *See Chisholm,* 679 F.2d at 62.[1]

---

1. Superior's argument that the "clearly erroneous" standard of review does not apply be-      cause the district court applied erroneous con-

## B. *Boudreaux's Negligence*

The second issue which must be addressed in this appeal is Boudreaux's argument that the district court's holding of negligence on its part was unjustified. The district court found that Boudreaux had been negligent in improperly mooring the pollution barge and in failing to put lights or reflectors on the barge so that it would be illuminated at night. Both omissions constituted violations of Coast Guard regulations. *See* 33 C.F.R. § 80.16(a) and (h), and 33 C.F.R. § 162.75(3)(ii). The court found that failure to comply with these regulations constituted negligence *per se. Reyes v. Vantage S.S. Co.*, 558 F.2d 238, 243 (5th Cir.1977); *modified,* 609 F.2d 140 (5th Cir.1980).

This finding of negligence included as well a determination that Matherne should have known or should have found out that the barge would remain in the canal overnight. Moreover, the court found that the only possible reason for not mooring both ends of the barge or lighting it was lack of adequate equipment on the tug being used by Matherne. Since the court found that neither of these factors would constitute sufficient justification for failure to comply with the statutes, it held that the negligence of the crew and the unseaworthiness of the vessel contributed to the collision between the MISS SUPERIOR and the pollution barge.

Boudreaux takes exception first to the court's finding that it had improperly moored the pollution barge. It argues first that the testimony at trial indicated that Matherne could not have placed the barge anywhere but in the B–5 canal because the only other available site, the A–13 canal, already had a barge in it. Second, it argues

that the method of mooring the vessel was also proper. It presented testimony of two witnesses who observed the barge on the morning of Verrett's accident which indicated that the barge was positioned more or less parallel to the B–5 canal. This is important since Boudreaux asserts that the evidence establishes that the barge was firmly grounded adjacent to the right bank and that the barge did not move any time prior to Verrett's accident. Thus, it asserts that both the site and method of mooring were proper and, for that reason, there was no fault on the part of the M/V ELAINE B in placing the barge in the B–5 canal.

On ample contrary evidence the court here found that the untied end of the barge swung to the center of the canal not by the force of the accident, but by force of the tide or the wake of passing vessels and that its position caused the accident. This factual finding, combined with the violation of Coast Guard regulations, and the court's finding that the M/V ELAINE B was unseaworthy because it had no mooring line for the loose end of the barge, renders the court's finding that Boudreaux's improperly contributed to the collision not clearly erroneous.[2]

## C. *Verrett's Contributory Negligence*

Both Boudreaux and Superior insist that Verrett was negligent in failing to use the beam spotlight on the MISS SUPERIOR. No evidence was presented at trial that Verrett was not proceeding at proper speed, not using his running lights, or not operating his vessel in the usual and proper manner. Moreover, witnesses testified that it was more difficult to see when the spot-

trolling legal principles in holding it vicariously liable for the negligence of Boudreaux, *see McCormack v. Noble Drilling Corp.*, 608 F.2d 169, 174 (5th Cir.1979), fails because the district court did not find negligence on Superior's part on the basis of vicarious liability. Rather, it determined that Durham himself was negligent in not assuring that the barge was safely moored and in not warning of its location.

**2.** This holding renders unnecessary a determination of the question of Boudreaux's duty to light the barge. Superior was charterer of the

barge. Durham, Superior's employee, apparently did not inform Matherne, Boudreaux's employee, that the barge was to remain moored overnight. In fact, Matherne claims that Durham told him the barge would be removed the same day. Thus, there may be some argument that Boudreaux had no duty to light the barge. Nevertheless, even if Boudreaux was not negligent in failing to light the barge, its negligence in choosing the site and in not tying the barge is sufficient for liability.

light was used because the light diffused off the water. Finally, as to the flowcharts showing the time entry for inspections of the B–5 well submitted in evidence to demonstrate Verrett's presence in the B–5 canal prior to the accident, the court accepted the explanation that it was customary to enter a reading in an earlier or later slot than the time the well was actually inspected. This conclusion was obviously based partially on the credibility of the witnesses and should not lightly be disturbed. *See Pluyer v. Mitsui O.S.K. Lines, Ltd.*, 664 F.2d 1243, 1245 (5th Cir.1982). On the basis of this evidence, we hold that the court's finding that Verrett was free from contributory negligence was not clearly erroneous.[3]

### D. *Cross-Claims for Indemnity*

Both Superior and Boudreaux argue that each was passively negligent and the other was actively negligent, and that, therefore, each is entitled to indemnity from the other. We point out first that in the recent case of *Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 501–02, the court analyzed the evolution of the active-passive negligence concept down through *United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), and held that there was no further need for the active-passive indemnification rule in a comparative fault system. The court extended and extolled the virtues of *Leger v. Drilling Well Control, Inc.*, 592 F.2d 1246, 1248 (5th Cir.1979), where the court found the *Reliable Transfer* comparative fault principles persuasive in noncollision personal injury cases as well, and held that "liability for

such damages is to be allocated among the parties proportionately to the comparative degree of their fault." On this basis, Superior argues that this court should reject the "divided damages" rule except in cases where the trier of fact is unable to fairly allocate fault and use a pro-rata allocation of fault. *Reliable Transfer,* 95 S.Ct. at 1716. Under this standard, Superior argues that its percentage of fault cannot reasonably exceed 15%.

The court's apportionment of fault is subject to the clearly erroneous standard. *See Reyes v. Vantage S.S. Co.,* 672 F.2d 556 (5th Cir.1982). Measured by this standard, and on the basis of the preceding discussion of Superior's and of Boudreaux's negligence, we hold that the district court's determination that the negligence of Superior combined equally with that of Boudreaux caused the occurrence is not clearly erroneous. With this affirmed finding of 50%/50% fault, the district court's finding that no indemnity was warranted was correct.

As an afterthought in its reply brief, Superior argues that Boudreaux owes it an indemnity based upon a claimed breach of the WWLP.[4] We find no basis for application of the theory of breach of the WWLP. *See Hercules, Inc. v. Stevens Shipping Co.,* 698 F.2d 726, 737–38 n. 25 (5th Cir.1983) (en banc).

### E. *Damages*

Both Superior and Boudreaux argue that the district court's assessment of damages against them was excessive and

---

**3.** Boudreaux seeks to rely on the presumption of fault that arises when a moving vessel strikes a stationary object. The district court's conclusion that this presumption is not applicable here is supported by its determination that an improperly moored and drifting vessel is arguably not a stationary object. *See* Griffin, The American Law of Collision, § 145 at 349 (1949). Moreover, as the court points out, even if the presumption arose initially, it was overcome by plaintiff's evidence.

**4.** This view has been criticized. *See* A. Parks, The Law of Tug, Tow and Pilotage 387 (2d ed. 1982):

In a strange line of cases, seemingly without reference to the well-established rule in *Stevens v. The White City,* 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699 (1932), some courts have held a tug company to a warranty of workmanlike service. (citations omitted).

It is submitted that a warranty of workmanlike service is not applicable to a towage situation and, if extended by an erroneous belief in its applicability, would fly in the face of the rule in *The White City.*

clearly erroneous. The district court found that Verrett had suffered a ruptured intervertebral disc as a result of the collision. Verrett's doctor had recommended that he undergo a laminectomy and lumbar fusion. Both Superior and Boudreaux argue that Verrett must undergo the operation to minimize damages. If a reasonably prudent person would submit to the operation, then those damages that the operation would have alleviated are not recoverable. *See Cline v. United States,* 270 F.Supp. 247 (S.D.Fla.1967).

■ Dr. Cenac, Verrett's doctor, testified that the operation was quite routine and could be carried out without great difficulty. According to Superior, the doctor further pointed out that successful surgery would alleviate Verrett's pain, give stability to his back, relieve irritation of the nerve roots and, likely return motor function to the muscles and legs. Verrett argued that the doctors concluded that the operation would not improve his ability to function physically. The district court accepted the evidence that Verrett's functional ability would not be increased by the operation, but it specifically found that Verrett's pain would be eliminated after surgery. Given this finding and the described nature of the surgery, the district court erred in awarding damages for that future pain which would in likelihood have been avoided by the surgery.

■ Boudreaux argues second that the award of damages for future loss of earnings should cease after the time when "full recovery from the surgery could be anticipated." Given the circumstances of this case, however, this court could find that it is uncertain whether Verrett could expect full recovery. The amount awarded for future lost earnings over Verrett's remaining work-life is not clearly erroneous.[5]

Boudreaux makes a third argument concerning damages. It argues that although "the Court correctly states that inflation should not be considered in such an award

(for past and future loss of earnings)," it nevertheless apparently and incorrectly considered the effects of inflation in determining the proper discount rate. We do not reach this issue since the parties have agreed to a discount rate which they must carry out.

### F.  *Limitation of Liability*

■ The final issue raised in this appeal concerns Boudreaux's claim that, pursuant to 46 U.S.C. § 183, liability should be limited to the value of the M/V ELAINE B at the time of the collision. Under 46 U.S.C. § 183, the liability of a shipowner for any loss, damage, or injury "done, occasioned, or occurred" without the privity or knowledge of the owner may not exceed the amount of value of the interest of the owner in the vessel. The determination of whether a shipowner is entitled to limitation involves a two-step process. Initially, the court must determine which acts of negligence or conditions of unseaworthiness caused the accident. Second, the court must determine whether the shipowner had knowledge or privity of the same acts of negligence or conditions of unseaworthiness. *Scc Farrell Lines, Inc. v. Jones,* 530 F.2d 7, 10 (5th Cir.1976). The district court found that Captain Matherne was negligent in the manner in which he moored the barge and that "this was due in part to the fact that there were insufficient mooring lines on the tug he was operating, as well as lights which rendered Boudreaux Towing's tug unseaworthy." Even if Boudreaux had no duty to light the barge (*see* note 2 *supra*), the lack of a mooring line on the tug established its unseaworthiness. As the court stated in *Tug OCEAN PRINCE, Inc. v. United States,* 584 F.2d 1151 (2d Cir. 1978), "It is the owner's duty to use due and proper care to provide a competent master and crew and to see that the ship is seaworthy; any loss occurring by reason of fault or neglect in these particulars is within his privity." *Id.* at 1155. Measured by this standard, we hold that the district court did

---

5. The district court determined that Verrett could perform sedentary or supervisory work. Therefore, the court's award for future lost

earnings properly did not include the amount Verrett could earn performing such labor.

not err in denying Boudreaux's limitation of liability.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.