United States Court of Appeals
Fifth Circuit

**F I L E D**

June 8, 2005

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

04-40949

_____

EDDIE PATTERSON,

Plaintiff-Counter-Defendant-Appellee,

Versus

ALLSEAS USA, INC., ET AL,

Defendants,

ALLSEAS MARINE CONTRACTORS SA,

Defendant-Counter Claimant-Appellant.

_____

Appeal from the United States District Court for the Eastern
District of Texas, Lufkin Division
No. 9:02-CV-175

_____

Before DAVIS, STEWART, and DENNIS Circuit Judges.

PER CURIAM:[1]

Defendant Allseas Marine Contractors SA ("AMC") appeals the

judgment of the district court awarding the plaintiff Eddie

Patterson ("Patterson") damages for injuries he sustained while

working for AMC as a superintendent aboard the pipe-laying vessel

LORELAY. After a bench trial, the district court found that one

---

[1]Pursuant to 5ᵀᴴ CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

-1-

of Patterson's subordinates was negligent for failing to warn Patterson of the dangers of traversing a stairway with wet boots. Because we find that AMC's employee had no duty to warn Patterson under the facts of this case, we REVERSE the judgment of the district court and render judgment for AMC.

I.

Patterson began working for AMC in September 1997 as a superintendent aboard the SOLITAIRE, the largest pipe-laying vessel in the world. In October 1999, Patterson was transferred to the LORELAY.[2] As superintendent aboard the LORELAY, Patterson was one of the highest ranking members of the ship's crew, answering only to the captain. He controlled all aspects of pipe construction and pipe-laying aboard the LORELAY, and supervised approximately 75% of the vessel's four hundred crew members.[3] Patterson was also a member of the Vessel Management Team, which is responsible for the safety of the ship, as well as the LORELAY's Safety, Health, and Environmental Committee ("SHEC"), whose duties include touring the ship to look for potential safety hazards.

On July 12, 2000, pursuant to his duties as a member of the

---

[2]The LORELAY is a "Panamanian flagged pipe-laying vessel" constructed in 1974 as a bulk cargo vessel and converted into a pipe-laying vessel in 1986. R. 579.

[3]The district court further explained that the position of superintendent is "highly specialized," and that the "degree of experience required for this position qualifies approximately fifty people in the world for this position." R. 580.

SHEC, Patterson, along with the captain and safety representatives from the contracting oil company, conducted a safety tour of the LORELAY. The group inspected the vessel's stern deck, which required the group to ascend the starboard crossover stairway. According to the district court, this stairway is identical to the port crossover stairway, the location of the accident giving rise to this lawsuit. During the inspection, Patterson noticed standing water on the port crossover deck, and made a note to check it out later that day.

Shortly after the tour concluded, Patterson and one of his subordinates, Jerry Williamson("Williamson"), a barge foreman, decided to inspect the standing water on the port crossover deck. To access the crossover deck, the pair used the port stairway. The port stairway on the LORELAY goes from the main deck up 6.19 meters to the crossover deck at an angle of approximately 60–65 degrees. The stairway is 0.6 meters wide, and was originally constructed with uninterrupted handrails on both sides. Some time after the crossover structure was installed in 1999, however, and before the date of the accident, a portion of the outboard handrail was removed to allow access from the stairway to the outrigger deck.[4] The entrance to the outrigger deck is located approximately 2.7 meters above the main deck. The inboard handrail was not altered and extends uninterrupted from

_____

[4]The outrigger deck is a "storage deck located forward of the crossover structure." R. 593.

the bottom to the top of the stairway.

Patterson and Williamson ascended the stairway without incident and arrived at the standing water on the crossover deck. Patterson instructed Williamson to drill drainage holes in the steel deck so the water would drain and thereby avoid a safety hazard. Both men walked into the standing water to determine exactly where to drill the drainage holes.

Without drying their dripping wet boots, Patterson and Williamson began descending the port stairway with Williamson in the lead and Patterson following, both facing away from the stairway. Patterson did not use either handrail to aid his descent; Williamson used the inboard handrail. About halfway down, Patterson slipped and fell into Williamson. Williamson kept hold of the handrail, remained on the stairway, and prevented the pair from falling down the stairs.

After the fall, Patterson went to see the ship's medic and complained of back pain. He soon left the LORELAY and sought treatment from Dr. John P. Sikors, a chiropractor who had treated him in the past. Dr. Sikors testified that, although Patterson had experienced significant back problems in the past, his back pain following the July 2000 fall was significantly worse than before. Dr. Sikors referred Patterson to Dr. Andrew Dosset, an orthopedic surgeon, who performed surgery on Patterson. Dr. Charles Gordon, Patterson's neurosurgeon, also performed three back surgeries on Patterson after his July 2000 fall.

-4-

Patterson filed suit against Allseas USA, Inc., Allseas Marine Services, NV, and AMC, under the Jones Act (46 U.S.C. § 688) and general maritime law.  He also asserted an in rem action against the LORELAY.

At trial, Patterson argued that his injuries were caused by AMC's negligence in the construction and maintenance of the port crossover deck and stairway of the LORELAY, where he sustained his injuries.  He also argued that the dangerous condition of the port  crossover deck and stairway rendered the LORELAY unseaworthy.

After a three day bench trial, the district court held that Patterson's claims of unseaworthiness and Jones Act negligence were properly asserted against only AMC and the LORELAY.[5]  The court dismissed Patterson's unseaworthiness claim entirely.  The court found that the water on the crossover deck was not unusually slippery or dangerous and not unusual for a vessel on the high seas.

The court also found that the condition of the port stairway

---

[5]Allseas Marine Services NV is an agent of AMC and provides personnel services for AMC.  Allseas Services USA is also an agent of AMC and contracts with AMC to provide written procedures and conducts safety briefings for the LORELAY.  The district court held that Patterson could only assert a claim under the Jones Act against his employer, AMC.  The court also held that Patterson's claim that the LORELAY was unseaworthy was only properly brought against the ship and the shipowner, which was also AMC.  Therefore, the court dismissed all parties except AMC and the LORELAY.  Neither party challenges this aspect of the judgment on appeal.

did not render the LORELAY unseaworthy.  Even assuming that Patterson fell in the vicinity of where the stairway was missing a handrail on the outboard side, the court found, the stairway was narrow enough for him to support his descent with his other hand.  The court acknowledged that it was common practice for seamen to use one hand to support their descent and the other to carry supplies, making the presence of an interrupted handrail on both sides of the stairway unnecessary for safe passage.

In addition, the court found that the tread on the steps of the port stairway were not excessively worn at the time of the accident.  The court found that although the stairway treads reflected use and some wear and tear they were not so worn as to create a dangerous condition.  The court found it significant that Williamson kept his footing on the stairway despite Patterson falling into him.[6]

The district court next addressed whether Patterson could recover under the Jones Act.  The court found that, essentially for the reasons stated in denying recovery predicated on unseaworthiness, AMC was not negligent in designing, constructing, or maintaining the port crossover deck and stairway.  The court found that workmen frequently traveled from the port crossover deck down the port stairway without incident,

---

[6]The district court also credited the testimony of Hank van Hemmen, AMC's expert, who testified that the wear on the stairway tread was not excessive and still capable of providing adequate traction.

which supported its conclusion that AMC exercised ordinary prudence in maintaining these areas.

The court, after rejecting plaintiff's claim against AMC on the predicates of liability discussed above, imposed liability against AMC on a single ground: failure to warn. The court found that Williamson, as the LORELAY's barge foreman, had a "very high duty with regard to safety," frequently worked on the port side of the LORELAY, and should have warned Patterson of the dangers associated with descending the port stairway with wet boots. The court held that, as Williamson's employer, AMC was vicariously liable for Williamson's negligence.

The court also found that Patterson had satisfied his burden of showing that Williamson's failure to warn caused his injuries. Although Patterson's evidence regarding causation was weakened by the fact that he misled his treating physicians regarding his medical history, the court stated, it was sufficient to satisfy the "featherweight" standard for causation under the Jones Act.

The district court reduced its judgment against AMC by 65% for Patterson's comparative fault. The court found that seamen should understand the dangers associated with working in wet boots, and that Patterson admitted that "standing water presents a hazard."[7] Despite knowing this, the court stated, Patterson needlessly and intentionally walked into the puddle, and, without

---

[7]R. 604.

drying his boots, attempted to descend the stairway without holding onto the handrail.  In doing so, the court found that "Patterson descended the stairway with less caution than a reasonably prudent seaman."[8]  The district court assessed damages against AMC in the amount of $1,051,457.80, which resulted in Patterson recovering $368,010.23 after accounting for his comparative fault.  AMC timely appealed.

## II.

AMC's principal argument on appeal is that the district court erred in concluding that Williamson had a duty to warn Patterson of the dangers associated with descending the port stairway with wet boots.  AMC argues that, under the Jones Act, a shipowner only has a duty to warn seamen of "dangers not reasonably known" and cannot be liable for failing to warn of an "open and obvious danger."

Patterson does not argue that AMC misstates the standard for determining whether a duty to warn arose under the facts of this case.  Rather, he argues that, because of the condition of the port stairway, the perils associated with descending the stairway with wet boots were neither open nor obvious.  AMC contends that Patterson's argument and the district court's conclusion that Williamson had a duty to warn contradict the court's finding that

_____

[8]R. 604.

-8-

(1) the port stairway was not unreasonably dangerous; and (2) the dangers associated with descending the port stairway with wet boots were "reasonably known" to Patterson.

A shipowner in a Jones Act case has a duty to warn his employees "in an effective way of dangers not reasonably known."[9] In other words, shipowners need not warn seamen of dangers that are "open and obvious."[10]

Based on the district court's finding that the dangers associated with descending the port stairway with wet boots were "reasonably known" to Patterson, Williamson had no duty to warn Patterson in this case. The record fully supports the district court's finding that Patterson should have known of the dangers associated with descending a stairway in wet boots. Patterson, who was Williamson's superior, was the main safety official under the captain and was intimately familiar with the LORELAY. Earlier that day Patterson led a safety team up and down a stairway that the court found was identical to the port stairway. Therefore, based on the district court's findings, the only difference between Patterson's descent of the port stairway on the date of the accident and his routine use of stairways on the LORELAY was that he descended the port stairway with wet boots.

---

[9]Davis v. Parkhill-Goodloe Co., Inc., 302 F.2d 489, 494 (5th Cir. 1962); Verrett v. McDonough Marine Service, 705 F.2d 1437 (5th Cir. 1983)(shipowner's duty to warn seaman arises from shipowner's being charged with his employee's lack of knowledge).

[10]Farrel v. United States, 167 F.2d 781, 783 (2d Cir. 1948).

As the court found, however, Patterson should have known that wet boots presented a potential hazard. Nothing Williamson knew or could have told Patterson regarding the dangers of descending the stairway in wet boots would have armed Patterson with any more knowledge than he had when he walked out of the standing water toward the stairway.  Therefore, the district court erred in concluding that Williamson owed a duty to Patterson to warn him of this known danger and consequently erred in finding Williamson negligent.

## III.

For the reasons stated above, the district court erred as a matter of law in finding that Williamson was negligent and that AMC was vicariously liable for Williamson's negligence.  We therefore REVERSE the judgment of the district court in favor of Patterson and render judgment in favor of AMC.

REVERSED.

RENDERED.