715 F.2d 219
 In the Matter of the Complaint of PATTON-TULLY
TRANSPORTATION COMPANY, owner of the MI-183-WR for
exoneration from or limitation of liability.
PATTON-TULLY TRANSPORTATION CO., Appellant,
v.
Patricia June RATLIFF, administratrix of the estate of Tommy
Lee Ratliff, deceased, Appellee.
 No. 82-4146.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 23, 1983.
 
 William G. Beanland, Vicksburg, Miss., for appellant.
 Ellis, Braddock & Bost, William M. Bost, Jr., Vicksburg, Miss., for appellee.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before THORNBERRY, GEE and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 INTRODUCTION:
 
 1
 Defendant shipowner Patton-Tully Corporation appeals the district court's interlocutory order determining that decedent Tommy Lee Ratliff was a Jones Act seaman, and expanding the shipowner's limitation fund to include the value of the entire flotilla of vessels engaged in the operation in the course of which Ratliff lost his life. We conclude that Patton-Tully's appeal of the district court's determination that Ratliff was a Jones Act seaman is premature. We further conclude that since the order expanding the fund at the same time establishes that Patton-Tully is simply not entitled to limit its liability, the order must be vacated.
 
 FACTS AND PROCEDURAL HISTORY:
 
 2
 Patton-Tully, a wholly-owned subsidiary of the Anderson-Tully Company, is a Mississippi corporation with headquarters in Vicksburg, Mississippi. As Anderson-Tully's marine subsidiary, Patton-Tully is primarily engaged in loading harvested timber on barges at various points along the Mississippi River and its tributaries, then transporting the timber to mills in Vicksburg with the aid of tugboats.
 
 
 3
 Tommy Lee Ratliff, a 16-year-old resident of Warren County, Mississippi, applied for work at Anderson-Tully in October 1979, and was assigned to Patton-Tully's Yazoo Canal repair facility as a laborer on the maintenance crew. This crew also did salvage, decking and fleeting work.
 
 
 4
 In March of 1981, Patton-Tully sent a number of boats and land-based equipment to a place on the river called Diamond Point, to load and transport about 1,200,000 board feet of hardwood timber to the lumber mills before the water level in the Mississippi fell too far to permit transporting the logs through a nearby chute. Vessels assigned to this project included the M/V McAuley, the M/V Frank Phipps (both tugboats), Derrick Boat 17, Crane Barge 54-B, 8 long barges, and a 16 foot aluminum skiff powered by a 20 hp outboard motor. The skiff, with a rated capacity of 1,080 pounds, was valued at $1,200.00. Ratliff was assigned as an oiler, helper or roustabout on the 54-B.
 
 
 5
 Work proceeded on the project for several days without incident, with the skiff and the M/V McAuley being used to ferry the workers to and from the jobsite on the far side of the river. The last of the logs were loaded aboard the log barges at 11:00 AM on March 15, 1981. All of the vessels save the small aluminum skiff made for the center of the river. James Jernigan, a deck hand on the M/V McAuley, told the six remaining workers that he was to take them back across the river in the skiff. The six men climbed into the skiff, which was piloted by Jernigan, and made for the Marathon LeTourneau landing on the far shore of the Mississippi. The weather had deteriorated since the early morning hours. A strong, gusty, southwesterly wind had sprung up and the river was rough. As soon as the boat turned out into the main body of the Mississippi, it was struck by the full force of the wind and by a "chop," short, steep waves which became rougher the closer the skiff got to the far shore. Jernigan steered a diagonal course toward the opposite bank, despite instructions from a more experienced operator aboard the skiff to steer directly across the river. At a point about 150 yards from the far shore, the skiff suddenly encounted particularly rough water. Jernigan turned the bow of the skiff into the waves and reduced the throttle, lowering the bow and causing the skiff to swamp and turn turtle. The men, who were wearing their lifejackets, were thrown into the water. Ratliff and another man, Kelly, struck out for shore, and were ultimately followed by two more men. The remaining two workers remained with the overturned skiff, and were eventually rescued by the M/V McAuley. At one point during his swim, Kelly heard Ratliff call for help, but was unable to save him because of the high wind and waves. Ratliff never made it to shore. The other two men who left the skiff reached the shore safely, as did Kelly.
 
 
 6
 On March 25, 1982, Patton-Tully filed a complaint for exoneration from or limitation of liability under 46 U.S.C.A. § 185 and Rule F of the Supplemental Admiralty Rules.[1] An ad interim stipulation for the value of the skiff in the amount of $1,200.00 was allowed by the court. On April 24, 1981, Patricia June Ratliff, Tommy Lee's mother and administratrix of his estate, filed a claim under the Jones Act seeking damages of $912,275.00 for the loss of her son's life, accompanied by third-party unseaworthiness and Jones Act claims against Anderson-Tully Company. Mrs. Ratliff then moved pursuant to Rule F(7) (see note 1 supra) to increase the limitation fund to $641,200.00, the value of all the vessels making up the flotilla which was assigned to the log-loading operation in the course of which Tommy Lee Ratliff died. The district court entered an interlocutory order granting Mrs. Ratliff's motion. Patton-Tully appeals from that order.
 
 ANALYSIS:
 Seaman Status
 
 7
 Patton-Tully first appeals the district court's determination that Ratliff was a seaman under the Jones Act, 46 U.S.C.A. § 688 (West 1975). The court's determination was included in its order granting Mrs. Ratliff's motion to expand the limitation fund. The order is clearly interlocutory, and the decision that Ratliff was a Jones Act seaman is not appealable under 28 U.S.C.A. § 1292(a)(3)[2] because it does not finally determine the rights or liabilities of either party to this dispute. While a determination that a plaintiff is not a Jones Act seaman is appealable under Fed.R.Civ.P. 56 because it effectively terminates the suit,[3] that portion of an interlocutory order determining that plaintiff is a Jones Act seaman merely allows him to pursue his claim in the hope of obtaining a final judgment against defendant.[4] Accordingly, we DISMISS Patton-Tully's appeal of this determination as premature.
 
 Flotilla Doctrine
 
 8
 In this Circuit, an interlocutory order increasing the amount of a limitation fund is, on the other hand, appealable under section 1292(a)(3). In re Drill Barge No. 2, 454 F.2d 408, 409 (5th Cir.), cert. denied, 406 U.S. 906, 92 S.Ct. 1610, 31 L.Ed.2d 816 (1972).
 
 
 9
 Under the "flotilla doctrine," the limitation fund liability of a defendant shipowner may be increased to include his interest in the value of all vessels engaged in a common enterprise or venture with the vessel aboard which the loss or injury was sustained.[5] The district court's interlocutory order by its words increases the amount of the limitation fund to include the value of all of Patton-Tully's vessels engaged in the log-loading operation in the course of which Ratliff met his death.[6] Patton-Tully appeals the increase in the fund to this Court.
 
 
 10
 Careful examination of the district court's order reveals a serious contradiction therein, requiring that it be vacated. In its order, the court unquestionably found that Patton-Tully had failed to carry its burden of proof on the question of its lack of privity or knowledge of the negligent acts and conditions leading to Ratliff's death.[7] 46 U.S.C.A. § 183(a), establishing the shipowner's right to limit his liability to his interest in the vessel, provides as follows:
 
 
 11
 The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.
 
 
 12
 46 U.S.C.A. § 183 (West 1958) (emphasis added). Since section 183(b) by its terms denies the shipowner the right to limit his liability where he has privity or knowledge of the negligent act,[8] the court's finding that Patton-Tully had failed utterly to establish its lack of privity or knowledge is wholly inconsistent with its order limiting Patton-Tully's liability to $641,200.00. The district court's order is accordingly VACATED, and this cause is REMANDED to the district court for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 Section 185 provides in pertinent part:
 The vessel owner, within six months after a claimant shall have given to or filed with such owner written notice of claim, may petition a district court of the United States of competent jurisdiction for limitation of liability within the provisions of this chapter and the owner (a) shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of the interest of such owner in the vessel and freight, or approved security therefor, and in addition such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of section 183 of this title, or (b) at his option shall transfer, for the benefit of claimants, to a trustee to be appointed by the court his interest in the vessel and freight, together with such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of section 183 of this title. Upon compliance with the requirements of this section all claims and proceedings against the owner with respect to the matter in question shall cease. R.S. § 4285; June 5, 1936, c. 521, § 3, 49 Stat. 1480.
 46 U.S.C.A. § 185 (West 1958).
 Rule F tracks § 185 in part, expanding upon it. Subsection 7 of Rule F provides as follows:
 (7) Insufficiency of Fund or Security. Any claimant may by motion demand that the funds deposited in court or the security given by the plaintiff be increased on the ground that they are less than the value of the plaintiff's interest in the vessel and pending freight. Thereupon the court shall cause due appraisement to be made of the value of the plaintiff's interest in the vessel and pending freight; and if the court finds that the deposit or security is either insufficient or excessive it shall order its increase or reduction. In like manner any claimant may demand that the deposit or security be increased on the ground that it is insufficient to carry out the provisions of the statutes relating to claims in respect of loss of life or bodily injury; and, after notice and hearing, the court may similarly order that the deposit or security be increased or reduced.
 Rule F(7), Supplemental Rules for Certain Admiralty and Maritime Claims (West 1982).
 
 
 [2]
 28 U.S.C.A. § 1292(a)(3) (West 1966) provides:
 (a) The courts of appeals shall have jurisdiction of appeals from:
 * * *
 (3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.
 (Emphasis added).
 
 
 [3]
 Ardoin v. J. Ray McDermott & Co., 641 F.2d 277, 278-79 (5th Cir.1981). See also Bertrand v. International Mooring and Marine, Inc., 700 F.2d 240, 243 n. 6 (5th Cir.1983)
 
 
 [4]
 Characterizing Ratliff as a Jones Act seaman advances his cause, but cannot result in the recovery of damages absent a finding that Patton-Tully was negligent. At oral argument counsel for both parties stated that the order did not determine liability, and neither party maintains that the order establishes negligence. We agree with both parties' interpretation of the order in this regard
 Suits under the Jones Act generally proceed in two steps. The court begins by considering defendant's liability. If liability is found, the case is referred to a magistrate for a determination of damages. Section 1292(a)(3) is generally invoked following the initial determination of liability, but before the determination of damages.
 Were we to entertain this issue on appeal, and should our analysis of the facts and the law convince us that the district court properly found that Ratliff was a Jones Act seaman, the district court could on remand deny all recovery under the Jones Act on the ground that Patton-Tully was not negligent, thereby rendering our determination a pointless exercise. The interests of judicial economy are not served by piecemeal appeals. For all these reasons, we decline to address the issue of Ratliff's status at this point in the proceedings.
 
 
 [5]
 See Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co., 377 F.2d 724 (5th Cir.1967), and In re Drill Barge No. 2, 454 F.2d 408 (5th Cir.), cert. denied, 406 U.S. 906, 92 S.Ct. 1610, 31 L.Ed.2d 816 (1972), for discussion and application of this doctrine
 
 
 [6]
 The order concludes with these words:
 The employer seeks to limit its liability by the value of this little skiff and outboard motor but this Court is of the opinion that its limitation must be and is the entire value of its flotilla of equipment in the aggregate amount of $641,200.00.
 Accordingly, the employer may conform with 46 U.S.C.A. § 183 and have its liability limited by said amount upon tendering to this Court within fifteen days the sum of $641,200.00 on the conditions set forth in the statute.
 ORDERED, this April 1, A.D., 1982.
 
 
 [7]
 The order states in pertinent part:
 Notwithstanding the amount in the limitation funds, limitation should be denied because Anderson-Tully Company is charged with Odis Lowery's [Patton-Tully's superintendent] knowledge of the fact that six workers would be traveling in the open crew boat to the Marathon LeTourneau landing. If Mr. Lowery did not have actual knowledge of this fact, he certainly should have known it as these people were left to their own devices and it was foreseeable that they would travel in the crew boat on this occasion as Mr. Lowery had done on March 15, 1981. They had seen the crew boat used over the weekend by Mr. Lowery and other high officials of Anderson-Tully Company and they had traveled six to a boat in such a boat on behalf of Anderson-Tully Company on other occasions. There was privity and knowledge as to the unseaworthy condition of the boat. Anderson-Tully Company may not avoid the liability by abandoning its responsibility either by failing to determine the competence of the boat operator or by its superior officer in the area leaving its people to find their own way back to shore. Anderson-Tully Company is charged with a duty to oversee the work and to see to their safe transport back as well as to provide competent crew. Additionally, there was no safety program or instructions for crew boat operators.
 * * *
 It is the burden of the petitioner, Patton-Tully Transportation Company, to establish the right to limitation. In a limitation proceeding, the burden is on the shipowner to prove his lack of privity or knowledge of the existence of the negligent or unseaworthy condition. If the shipowner knew or should have known that a certain condition existed then he may not limit his liability. Puamier v. Barge BT 1793, 395 F.Supp. 1019 (D.C.Virginia 1974); Hamilton v. Canal Barge Company, 395 F.Supp. 978 (D.C.La.1975). Patton-Tully has not met its burden of proving lack of privity or knowledge that its employees would return to the Mississippi shore in an overloaded boat piloted by an inexperienced, incompetent and negligent operator. All Patton-Tully has shown is an inclination to ignore the probability that the six employees would choose the same sort of transport as their boss had done on two separate occasions that same weekend.
 The petitioner's proof utterly failed to establish a lack of privity and knowledge. What the petitioner's proof did show was that the decedent lost his life by virtue of the unseaworthiness of the crew boat and the negligence of its operator. Therefore, limitation of liability should be denied.
 At oral argument, counsel for Patton-Tully recognized that the order denied Patton-Tully the right to limit its liability, but did not appeal that determination. Neither party argued that this determination was inconsistent with the order increasing liability.
 
 
 [8]
 See Verrett v. McDonough Marine Service, 705 F.2d 1437 (5th Cir.1983), for our most recent construction of the "privity or knowledge" clause of section 183(a)