854 F.2d 758
 1989 A.M.C. 1004
 In the Matter of TALBOTT BIG FOOT, INC. and Patterson Gulf
Coast Drilling Co., as Owner/Manager of the Big
Foot Two, Petitioning for Exoneration
From or Limitation of Liability.
TALBOTT BIG FOOT, INC., Patterson Gulf Coast Drilling Co.,
Inc. and Patterson Gulf Coast Drilling Associates,
Ltd., Plaintiffs-Appellants,
v.
Richard BOUDREAUX, et al., Defendants-Appellees.
 No. 87-3308.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 14, 1988.
 
 Walter J. Leger, Jr., Franklin G. Shaw, Michael J. Mestayer, New Orleans, La., for plaintiffs-appellants.
 C. Scott LaBarre, T. Peter Breslin, Gauthier, Murphy, Sherman, McCabe & Chehardy, Metarie, La., for Barier and Wilson.
 Lawrence N. Curtis, J. Minos Simon, Lafayette, La., for Boudreaux.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before WISDOM, REAVLEY and POLITZ, Circuit Judges.
 REAVLEY, Circuit Judge:
 
 
 1
 The owners of a vessel, having petitioned the district court under the Limitation of Liability Act (see 46 U.S.C.App. Sec. 185), appeal the district court's increase of the amount of security which they must post. Because we find insufficient factual development in the record upon which to make a proper determination, we remand the cause with instructions.
 
 I. Facts and proceeding below
 
 2
 On December 31, 1986, one crewman was killed and three others were injured when a cable broke aboard their drilling vessel, the BIG FOOT TWO. At the time, the jack-up drilling vessel was affixed by its retractable legs to the seabed in the Breton Sound area in the Gulf of Mexico, within the contiguous zone off the Louisiana coast.
 
 
 3
 One week later, Talbott Big Foot, Inc., Patterson Gulf Coast Drilling Company, Inc., and Patterson Gulf Coast Drilling Associates, Ltd. (the "vessel owners") filed a petition for exoneration from, or limitation of, liability in federal district court, and posted security in the amount of $233,500. In February 1987, Michele Barbier, administratrix of the deceased crewman's estate, and Joel Wilson, one of the injured crewmen (jointly, "the crewmen"), filed a motion to increase the amount of security required, pursuant to 46 U.S.C.App. Sec. 183(b). A hearing was held, and on April 20, 1987, the district court ordered the security required of the vessel owners increased to $824,040. The vessel owners now appeal this interim order.II. Discussion
 
 A. Jurisdiction
 
 4
 The crewmen dispute our jurisdiction to hear this appeal on the grounds that the interlocutory order appealed makes no final determination of the rights and liabilities of the parties. Our decision in Matter of Patton-Tully Transp. Co., 715 F.2d 219 (5th Cir.1983), determines our disposition of this issue. In Patton-Tully, we held that an interlocutory order increasing the amount of required security in a limitation of liability action is appealable under 28 U.S.C. Sec. 1292(a)(3).[1] Id. at 222.
 
 B. The Statutory Framework
 
 5
 In general, the Limitation of Liability Act (the "Act") permits a vessel owner to limit his liability for loss or injury to the value of his interest in the vessel and its freight, provided the loss or injury occurred without his privity or knowledge. 46 U.S.C.App. Sec. 183(a). A vessel owner who petitions for a limitation of liability determination under the Act is required to post as security either the value of his interest in the vessel and its freight, or his actual interest in the vessel and its freight, and such additional sums as are determined by the court to be necessary to effectuate the provisions of the Act. 46 U.S.C.App. Sec. 185.
 
 
 6
 The district court required the vessel owners to increase the amount of posted security under the following statutory provision:
 
 
 7
 In the case of any seagoing vessel, if the amount of the owner's liability as limited under subsection (a) of this section is insufficient to pay all losses in full, and the portion of such amount applicable to the payment of losses in respect of loss of life or bodily injury is less than $420 per ton of such vessel's tonnage, such portion shall be increased to an amount equal to $420 per ton, to be available only for the payment of losses in respect of loss of life or bodily injury. If such portion so increased is insufficient to pay such losses in full, they shall be paid therefrom in proportion to their respective amounts.
 
 
 8
 46 U.S.C.App. Sec. 183(b).
 
 The statute then makes this exception:
 
 9
 [T]he term "seagoing vessel" shall not include pleasure yachts, tugs, towboats, towing vessels, tank vessels, fishing vessels or their tenders, self-propelled lighters, nondescript self-propelled vessels, canal boats, scows, car floats, barges, lighters, or nondescript non-self-propelled vessels, even though the same may be seagoing vessels within the meaning of such term as used in section 188 of this title.
 
 
 10
 46 U.S.C.App. Sec. 183(f).
 
 
 11
 The issue of this appeal is whether BIG FOOT TWO is "seagoing" within these provisions or, precisely, is BIG FOOT TWO exempt from the increased security deposit of Sec. 183(b) by the vessel description of Sec. 183(f)?
 
 
 12
 C. The BIG FOOT TWO as "Seagoing"
 
 
 13
 The district court found the BIG FOOT TWO to be a seagoing vessel under Sec. 183(b) by applying the principles in In re Sedco, Inc., 543 F.Supp. 561, 570-72 (S.D.Tex.1982), rev'd on other grounds, 767 F.2d 1140 (5th Cir.1985). The Sedco court, however, was determining whether a particular semisubmersible drilling rig, which had made numerous ocean voyages, was a "vessel" for purposes of invoking the Limitation of Liability Act generally. The Sedco court was not confronted with, and did not address, the effect of Sec. 183(f). Since the designation of the BIG FOOT TWO as a "vessel" entitled to the benefits of the Act is not at issue, Sedco affords no assistance in our resolution of this case.
 
 
 14
 While the Act does not define "seagoing," it does expressly delineate certain craft which, even though arguably seagoing, are deemed not to be seagoing for purposes of Sec. 183(b). 46 U.S.C.App. Sec. 183(f). The vessel owners contend that the term "nondescript non-self-propelled vessels" included in Sec. 183(f) encompasses the BIG FOOT TWO. The crewmen argue that the Sec. 183(f) listing includes only craft designed for local harbor and river usage. They claim that the BIG FOOT TWO was designed to drill for oil in the gulf seas and is capable of being transported overseas. The record, however, contains limited information about the BIG FOOT TWO. It is non-self-propelled, measures 137.6' in length and 100.1' in beam, and weighs 1,962 tons. It was designed to transport a drilling work station from place to place, attaching temporarily to the seabed by the use of its retractable legs while a drilling operation is in progress. It was involved in a drilling operation within the contiguous zone at the time of the accident.
 
 
 15
 We do not find in the term "nondescript non-self-propelled vessels" in Sec. 183(f) the definition to resolve the question before us. We are told that the purpose of the Sec. 183(f) laundry list of vessels deemed nonseagoing under Sec. 183(b), and thus not subject to Sec. 183(b)'s increased liability, was to protect the interests of the owners of harbor and river vessels. See 3 Benedict on Admiralty Sec. 47, at 5-46 (7th ed. 1986) ("This list was offered to the Committee on Commerce of the House of Representatives by representatives of harbor and river interests owning what was termed 'marine equipment,' and it is thought proper to construe the list, with the exception of pleasure yachts, as limited to harbor and river vessels."). This restriction of Sec. 183(f) to river- and harbor-type vessels has been adopted by other courts interpreting the provision's scope. See In re Petition of the Dodge, Inc., 282 F.2d 86, 89-90 (2d Cir.1960).
 
 
 16
 In determining whether a particular craft is a vessel under the Act, the courts have looked to the function and capabilities of the craft. Sedco, 543 F.Supp. at 570-71. Similarly, one court deeming a vessel "seagoing" under Sec. 183(b) focused on the particular craft's intended routine usage " 'outside the headlands or fauces of a harbor, or ... outside the boundaries of "inland waters" as established by a competent authority....' " Petition of Bogan, 103 F.Supp. 755, 759 (D.N.J.1952) (quoting 3 Benedict on Admiralty, 6th ed., at 405).
 
 
 17
 While not directly on point, analysis of the statutory definitions of "barge" and "seagoing barge" is helpful in our effort to devise the proper test for whether a vessel is "seagoing" under Sec. 183(b). Section 2101(2), 46 U.S.C., defines "barge" as "a non-self-propelled vessel." Section 2101(32) defines a "seagoing barge" as "a non-self-propelled vessel of at least 100 gross tons making voyages beyond the Boundary Line." The Boundary Line is that line which divides the high seas from rivers, harbors, and inland waters. 33 U.S.C. Sec. 151. Under proper authority, the Boundary Line has been set by the Coast Guard as twelve nautical miles from the Gulf Coast.[2] 46 C.F.R. Sec. 7.105(a). By these definitions, whether a barge is seagoing is determined by an examination of the function of the particular vessel.
 
 
 18
 It is not enough to decide that a particular craft has the capability to go beyond inland waters and the Boundary Line, because most of the vessels enumerated in Sec. 183(f) have that capability. Nor is the actual use of the vessel the measure, because ocean liners may be used on inland waters for entertainment purposes. It is rather the usual operations to be expected, for a vessel of its design, that defines whether a particular vessel is seagoing in the meaning of this statute.
 
 
 19
 We conclude that the inquiry to determine whether a particular vessel is "seagoing" under Sec. 183(b) and not exempted by Sec. 183(f) is whether the vessel does, or is intended to, navigate in the seas beyond the Boundary Line in the regular course of its operations. These operations may in fact proceed on either side of the Boundary Line; but the court must find that, considering the design, function, purpose, and capabilities of the vessel, it will be normally expected to engage in substantial operations beyond the nautical boundary.
 
 
 20
 There has been no finding made by the district court to meet this test, and the record gives us no basis for making a finding. We remand the case to the district court for this purpose. We do not vacate the existing order but direct that the court promptly determine whether to affirm or vacate, pursuant to this opinion.
 
 
 21
 REMANDED.
 
 
 
 [1]
 28 U.S.C. Sec. 1292 provides in pertinent part:
 (a) ... the courts of appeals shall have jurisdiction of appeals from:
 * * *
 (3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.
 
 
 [2]
 The area that begins three nautical miles from the coast and extends to the Boundary Line is defined as the contiguous zone. 33 C.F.R. Sec. 2.05-15. See also 33 C.F.R. Sec. 2.05-5