Jesus LUNA, Plaintiff-Appellant,

v.

A. Robert NERING and Victor M. Blanco, Defendants-Appellees.

No. 28493.

United States Court of Appeals, Fifth Circuit.

May 18, 1970.

Bob Hoblit, Warren Burnett, Odessa, Tex., Alejandro Duran, Jr., J. B. Ochoa, Jr., El Paso, Tex., for appellant.

Schuyler B. Marshall, El Paso, Tex., for Victor M. Blanco.

William Duncan, El Paso, Tex., for A. Robert Nering.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

CLARK, Circuit Judge:

In this diversity based medical malpractice case, the district court directed a verdict for the defendant doctors at the conclusion of plaintiff's proof. Under the stringent proof standards of Texas medical malpractice law the evidence, viewed most favorably to the plaintiff, discloses negligence and informed consent issues on which fair-minded men might reach differing conclusions. We reverse and remand.

The facts are stated most favorably to plaintiff's position [1] but with due regard to the Texas court-made rule that medical fact issues can only be created by the testimony of doctors of the same school of practice as the defendant doctor.[2]

The plaintiff, Jesus Luna, was injured by an industrial accident in which a small piece of metal was flung into his left shoulder. Immediately after he was hospitalized, Luna had sufficient use of the fingers and thumb on his left hand to unbutton his shirt. The defendant, Dr. Nering, testified that his neurological examination made at that time showed no nerve injury to Luna's left hand or fingers. Following x-ray, bandaging and medication for pain Dr. Nering ordered bed rest for Luna and advised him that the metal particle would be removed the next day.

The following morning external bleeding was still occurring and swelling at the site of the wound indicated that internal bleeding was also taking place. Dr. Nering brought a surgeon, Dr. Blanco, into the case and a determination was made to pursue prompt surgical procedures. Drs. Nering and Blanco testified that the situation required emergency surgery, but another physician of the same school of medicine testified that under the circumstances revealed by the hospital records of Luna's case his condition on that morning indicated that the proposed surgery was elective and not of an emergency nature. Dr. Nering testified that these hospital records were accurate, complete and carefully kept.

No attempt was made by Drs. Nering or Blanco to explain the surgery and its risks to Luna and to obtain his informed consent. The appellant doctors themselves testified that if the surgery had not been of an emergency nature correct medical procedure would have required that they warn Luna that the operation carried a possibility of nerve injury.

Immediately after the surgery Luna's left hand was numb and he could not bend his fingers. Within two days after the surgical procedures the long, ring and little fingers on this hand began to retract and are presently permanently curled inward, or clawed.

The appellant doctors testified that their surgical procedure was to follow the path the shrapnel had taken as it entered and lodged in Luna's shoulder. This did not require them to expose any portion of the major nerve network in the shoulder, known by the technical name, brachial plexus. No nerve was observed in the surgical field at any time during the operation. Severance of a nerve by the missile or by surgery would have caused immediate detectable evidence of such damage.

Luna's post surgical neurological deficit became so severe that another doctor performed exploratory surgery in an attempt to discover and, if possible, correct or improve this condition. This surgery disclosed that a branch of the brachial plexus nerve network known as the lateral cord of the median nerve had been severed and that scar tissue had formed and was pressing against the rest of the major nerve bundle. This scar tissue appeared to be the cause of the clawing. The severed nerve serves only the thumb. Its severance would cause loss of feeling and movement to that digit alone. Both defendant doctors testified that it would have been negli-

1. Boeing v. Shipman, 411 F.2d 365 (5th Cir. 1969).

2. Bowles v. Bourdon, 219 S.W.2d 779 (Tex. 1949).

gence to cut any nerve in the course of their surgical procedures. No proof established whether the operation or the metal fragment caused damaging scar tissue. Nor was it shown that the scarring was not a normal risk inherent in this operation.

■ Our court has recently reviewed the substantive rules of Texas law in a medical malpractice case. Bender v. Dingwerth, 425 F.2d 378 (5th Cir. 1970). There is no need to retrace any part of this very thorough-going explication. Only one case not there cited has a particular pertinence to the case at bar, Humphreys v. Roberson, 125 Tex. 558, 83 S.W.2d 311 (1935). These authorities instruct us that Texas requires that the testimony of a doctor of the same school of medicine as the defendant must prove every medical fact necessary to show (1) that the doctor was negligent and (2) that the negligence was a proximate cause of the patient's injury. The only modifiers pertinent here are (a) such proof does not have to show that the doctor's negligence was the sole proximate cause, although it must show that it was *a* proximate cause; (b) the defendant doctor's own testimony can comprise the necessary medical proof; and (c) when the negligence is of such a nature as to be obvious to a layman, medical proof is excused.

■ Applying these principles of law to the facts of this case, there was direct medical and direct and circumstantial lay evidence that the metal missile which lodged in Luna's shoulder did not sever the lateral cord of the median nerve. As the record stood at the conclusion of plaintiff's case, a directed verdict on the negligence issue relating to the severed nerve was error. Because this court cannot know what proof may be developed on this entire issue of negligence on retrial, it is not possible to fix here any limitation on what precise negligence issues, if any, should be submitted to the jury. That decision is committed to the sound discretion of the trial judge under the principles and applications demonstrated here.

■ On an entirely different and independent ground, Luna also made a case for the jury. Notwithstanding a showing of utmost care by a physician, Texas law allows recovery for damages sustained on account of medical treatment to which the patient has not given his informed and knowledgeable consent. Wilson v. Scott, 412 S.W.2d 299 (Tex. 1967). *Wilson* establishes the rule that Luna "had the burden to prove by expert medical evidence what a reasonable medical practitioner of the same school and same or similar community under the same or similar circumstances would have disclosed to his patient about the risk incident to a proposed diagnosis or treatment, that the physician departed from that standard, causation and damages." 412 S.W.2d at 302. Luna clearly met the evidentiary requirements of this rule. The defendant doctors admitted that they did not attempt to obtain his consent. Their failure to do so was based upon their claim that emergency or "heroic" surgery was necessary, and that Luna was only semi-conscious and incapable of consent. Leaving aside the conflict in the evidence as to whether surgery had been planned since the previous evening, Luna presented evidence through another physician of the same school that the surgery was elective and not emergency. The objection of the defendant doctors that this other medical testimony was based solely on hospital records goes only to the weight of the evidence and not its admissibility to create a jury issue.

■ The doctors appended to their briefs a printed form of consent to surgical procedures which Luna signed at the time of his admission to the hospital. This form was blank as to the type of surgery covered thereby. The form is not relevant or material to the issue of informed consent and on oral argument before this court counsel for the doctors stated that they placed no reliance thereon. The form was in the entire batch of hospital records introduced by the plaintiff. This form, under a proper

objection, should be excluded from the evidence on a retrial of this case as not bearing on informed consent.

Reversed and remanded.