**James H. SEBREE, individually, and as next friend for his minor son, James S. Sebree, Plaintiffs-Appellants.**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 76–2430.

United States Court of Appeals, Fifth Circuit.

Feb. 2, 1978.

---

2. The record indicates that it was about a hundred miles from Roanoke to Tazewell.

Elmer H. Parish, Wichita Falls, Tex., for plaintiffs-appellants.

Michael P. Carnes, U. S. Atty., Richard B. Vance, Asst. U. S. Atty., Fort Worth, Tex., for defendant-appellee.

Before COLEMAN, HILL and RUBIN, Circuit Judges.

PER CURIAM:

This medical malpractice suit was brought by four-year-old James S. Sebree, through his father as Next Friend, against the United States under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671–2680.

The son of an Air Force Sergeant, James was admitted to the Sheppard Air Force Base Hospital to be treated for a cut he had received on the head when struck by a slow moving vehicle. During the course of his stay, he began running a temperature. After an investigation, the attending physician, Dr. Gordon A. Dowsett, employed by the United States Air Force, diagnosed the fever as being caused by aspiration pneumonia and prescribed drugs he thought would cure the condition. The fever was eliminated by the drugs and then returned but was absent when Dr. Dowsett released him from the hospital. During the evening after his release, James displayed more alarming symptoms. The next morning he was readmitted to the base hospital and transferred to another hospital, where his condition was then diagnosed as meningitis. As a result of contracting meningitis, James is paralyzed from the waist down and is without full use of his left arm.

Upon trial, the District Court found for the defendant. Its findings of fact and conclusions of law are annexed to this opinion.

On appeal, the plaintiff urges that, contrary to the trial court's decision, the evidence clearly proved that Dr. Dowsett was negligent and his diagnosis, treatment, and James' first release did not conform to accepted standards of medical care in the locality, and the alleged negligence was the proximate cause of the severity of his injuries.

To be liable for professional negligence in Texas, it had to be shown that Dr. Dowsett had not exercised that degree of care which a doctor of ordinary prudence and skill, practicing in the same or similar community would have exercised in the same or similar circumstances. *Edwards v. United States*, 5 Cir. 1975, 519 F.2d 1137, 1139. We may not set aside a finding by a district court that negligence did not exist unless we determine the decision was

"clearly erroneous". Rule 52(a), F.R.Civ.P.; *McAllister v. United States*, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954). Likewise, the trial court's findings on proximate cause may not be set aside unless shown to be "clearly erroneous". Rule 52(a), F.R.Civ.P.; *Southern National Bank of Houston v. Crateo, Inc.*, 5 Cir. 1972, 458 F.2d 688, 697. A review of the trial transcript reveals evidence sufficiently supporting the trial court's findings.

The Judgment of the District Court is AFFIRMED.

## APPENDIX

United States District Court,
N. D. Texas,
Wichita Falls Division.

JAMES H. SEBREE, INDIVIDUALLY, AND AS NEXT FRIEND FOR HIS MINOR SON, JAMES S. SEBREE, Plaintiffs,

v.

THE UNITED STATES OF AMERICA, Defendant.

Civ. A. No. CA–7–75–0029.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This action was tried before the court without a jury. After considering all the evidence and arguments of counsel, the court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. The plaintiffs are citizens of the State of Texas. The suit is brought on behalf of James S. Sebree, a minor, by his father, James H. Sebree, Complaining of the United States of America.

2. Minor plaintiff was injured on October 7, 1973, when a slow-moving vehicle struck him in the head. His mother took him to the United States Regional Hospital at Sheppard Air Force Base in Wichita Falls, Texas, for treatment of a laceration near his left eye.

3. Plaintiff was admitted to the hospital where Dr. Gordon A. Dowsett a physician specializing in ear, nose and throat problems, treated him. Dr. Dowsett was at all times acting within the course and scope of his employment with the United States Air Force.

4. On October 7 a general anesthesia was administered to plaintiff and a surgical procedure was performed to explore and close the laceration. While still under the effects of the anesthetic plaintiff vomited.

5. During the late afternoon of October 8 plaintiff developed a fever which persisted to the next morning. Dr. Dowsett ordered a chest x-ray which he read as showing an infiltrate in the lower lobe of the right lung. The radiologist subsequently read the x-ray as normal. On the basis of his reading of the x-ray, the patient's fever, the presence of rales in plaintiff's chest, and the vomiting, Dr. Dowsett diagnosed aspiration pneumonia. He prescribed an antibiotic, ampicillin, and tylenol.

6. During the next few days in the hospital plaintiff's temperature was irregular; he vomited; he frequently wet the bed; he complained of persistent headache; and he was sluggish and unresponsive.

7. Dr. Dowsett intended to release plaintiff from the hospital on the morning of October 12 but changed his mind when plaintiff's temperature was again elevated. He prescribed tylenol. By 2:00 p. m. plaintiff's temperature was normal, and Dr. Dowsett released plaintiff from the hospital. The doctor advised plaintiff's mother to administer aspirin for fever and headaches and to report any change in his condition.

8. At home on the afternoon and evening of October 12 plaintiff was lethargic, irritable and unresponsive. He drank large amounts of water and complained of headache for which his mother administered aspirin. In the early morning of October 13 plaintiff fainted while his mother was dressing him. He was returned to the Sheppard Air Force Base hospital in a seri-

ous and rapidly deteriorating condition. He was transferred that morning to the Wichita General Hospital where he was diagnosed to have pneumococcal bacterial meningitis.

9. Although the medical testimony is divided, the court is of the opinion that plaintiff contracted the meningitis at home after his release from the hospital. The court's finding in this regard is not essential to the disposition of the case. This form of meningitis in conjunction with head trauma develops with extraordinary rapidity and invariably causes serious injury and is often fatal.

10. The effects of the meningitis on plaintiff were severe. He suffers from muscle atrophy and partial permanent paralysis of both his legs and left arm. He cannot walk unaided.

11. Although plaintiff's original complaint stated a cause of action on behalf of James H. Sebree individually, these allegations were not carried forward in the pretrial order. The court finds that the parents of plaintiff have not sought any individual recovery. In any event the court heard no evidence of damage to the parents.

12. Plaintiff's theory of negligence is that an earlier diagnosis of his condition would have significantly alleviated his injuries. He contends that Dr. Dowsett incorrectly diagnosed plaintiff's condition and negligently released him from the hospital on October 12, thereby delaying the diagnosis and treatment of meningitis.

13. There is no known accepted medical means for preventing the form of meningitis plaintiff contracted.

14. Dr. Dowsett's diagnosis of aspiration pneumonia complicated by head trauma adequately explained plaintiff's symptoms and conformed with accepted standards of medical care practiced in the Wichita Falls locality. Similarly, Dr. Dowsett's treatment of plaintiff's condition conformed with accepted standards of medical care practiced in the locality. These standards did not require Dr. Dowsett to seek the consultation of a pediatric specialist on the facts of this case.

15. Dr. Dowsett's release of the plaintiff on the afternoon of October 12 conformed with acceptable medical practice in the locality at that time.

16. Plaintiff failed to show that earlier diagnosis and treatment of plaintiff's disease would in medical probability have resulted in any lessening of his injuries.

17. Any finding of fact deemed a conclusion of law is so adopted.

### Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter of this cause. 28 U.S.C. § 1346(b).

2. The law requires a treating physician to exercise that degree of care which a doctor of ordinary prudence and skill, practicing in the Wichita Falls community or in a similar community would have exercised in the same or similar circumstances. *Edwards v. United States*, 519 F.2d 1137 (5th Cir. 1975).

3. Plaintiff cannot recover damages from the United States of America in this case for the following reasons:

a. Plaintiff failed to show by a preponderance of the evidence that Dr. Dowsett's treatment of plaintiff in any way deviated from the standard of care the law and community expected of him. Simply put, he was not negligent.

b. Plaintiff failed to show by a preponderance of the evidence that any negligence by defendant's employees proximately caused plaintiff's injuries.

4. Any conclusion of law deemed a finding of fact is so adopted.

Dated this 16th day of March, 1976.

/s/ Robert M. Hill
United States District Judge