OIL, CHEMICAL AND ATOMIC WORK-
ERS INTERNATIONAL UNION,
LOCAL NO. 4–16000, Plaintiff-Appel-
lant,

v.

ETHYL CORPORATION,
Defendant-Appellee.

No. 82–2180
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 28, 1983.

Robert W. Rickard, Houston, Tex., for
plaintiff-appellant.

L. Chapman Smith, Houston, Tex., for
defendant-appellee.

Before CLARK, Chief Judge, POLITZ and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

We again address the dispute between Ethyl Corporation (Ethyl) and Oil, Chemical and Atomic Workers International Union, Local No. 4–16000 (Union), over the scope of a 1973 arbitration award involving Ethyl's use of supervisory and salaried employees in hourly-rated jobs. Our earlier opinion sets forth in great detail the factual, legal and procedural background of this litigation. 644 F.2d 1044 (5th Cir.1981). We shall not repeat those details except as minimally required for today's disposition.

On the initial appeal we considered whether an arbitrator's award ordering Ethyl to cease using a specific supervisor to perform work ordinarily assigned to hourly-rated employees, and to "desist from like violations" in the future, prohibited Ethyl from assigning supervisors to work in wage roll positions within the sodium section of its Pasadena, Texas plant. After balancing the competing interests of the parties in light of the strong federal policy favoring resolution of labor-management grievances through arbitration, we fashioned a test to be utilized in determining whether the challenged conduct was substantially similar to that heretofore proscribed by the prior award, and remanded for application of that test. After a lengthy evidentiary hearing, the district court declined on remand to enforce the award, relegating the dispute to arbitration. Perceiving no clearly erroneous finding of fact, Fed.R.Civ.P. 52(a), and no error of law, we affirm.

*Factual Background*

Article XI of the collective bargaining agreement between the parties bars Ethyl's use of supervisory and salaried employees in hourly-rated jobs, except where necessary to (a) preserve plant safety, (b) instruct or train employees, or (c) perform experimental or research and development work.[1] Frequent disagreements regarding this clause finally led in 1973 to an arbitrator's decision directing Ethyl to cease using a named supervisor contrary to Article XI, and further ordering Ethyl to "hereinafter desist from violations such as that involved here." In the ensuing years the Union charged Ethyl with numerous instances of noncompliance with the arbitrator's award.

The simmering conflict finally erupted in July 1979, when Ethyl notified the Union of its intent to assign 21 supervisory employees and salaried engineers to hourly-rated tasks in the sodium unit. The transferees were actively involved in the operation of the section through August, but were thereafter phased out over a period of several weeks. The Union brought suit under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking enforcement of the 1973 arbitration award.

The district court, 479 F.Supp. 953, on its initial consideration, dismissed the complaint based on the Union's failure to prove a strict factual identity between the underlying facts of the instant controversy and those of the 1973 arbitration award. On appeal we rejected the restrictive test applied by the district court and adopted a "material factual identity" test. 644 F.2d at 1051. We also directed use of a series of evidentiary steps patterned on the Supreme Court's teachings in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under *Burdine* and our mandate, which the dis-

---

1. Article XI provides:

    Supervisory and salaried employees will not be authorized to perform work on an hourly rated job, except in the following types of situations:

    a. When it is necessary for the supervisor or foreman to act for the safety of personnel or equipment,

    b. Instruction or training of employees, and

    c. Performance of necessary experimental, special mechanical, or research and development work deemed necessary by the COMPANY.

trict court was constrained to follow on remand, *see Briggs v. Pennsylvania R. Co.,* 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948); *Wm. G. Roe & Company v. Armour & Company,* 414 F.2d 862 (5th Cir.1969), the Union bore the ultimate burden of establishing that Ethyl's action was, beyond argument, proscribed by Article XI. Acquittal of this ultimate burden was to be measured against the *Burdine* paradigm.

In order to secure enforcement of the arbitrator's award in the factual situation at bar, the Union was initially obliged to show that Ethyl's acts were clearly within the ban of Article XI. Failing this, dismissal of the Union's complaint was mandated, leaving the Union free to resort to the arbitral process. If the Union carried its initial burden, Ethyl was to be afforded an opportunity to demonstrate that its conduct was exempted from Article XI. Should Ethyl articulate a legitimate defense to the application of Article XI, the Union was then required to "prove, beyond argument, that the cited exception [was] a mere pretext or [was], again beyond argument, otherwise inapplicable." 644 F.2d at 1052. If the Union sustained this burden, the district court would be empowered to tailor a remedy enforcing the terms of the arbitration award. If it did not, the complaint would have to be dismissed, and if it wished to pursue the matter further, the Union would have to seek arbitration. *Id.*

On remand, the district court found that the Union satisfied its initial burden of showing a violation of Article XI by the assignment of supervisory and salaried employees to hourly-rated jobs in the sodium section. Thereafter Ethyl was permitted an opportunity to establish that these assignments were consistent with Article XI. Ethyl offered evidence to show that the transferees were used for the purpose of training and instructing new employees. Other testimony disclosed problems Ethyl experienced in its sodium section, due to the lack of experienced employees and an increase in the demand for sodium. To correct its production deficits, Ethyl temporarily assigned experienced engineers and supervisors to work in the section and to train newly hired personnel.

Following this explanation, the Union sought to establish that the proffered legitimate business reason was merely a pretext for prohibited conduct. The Union offered evidence contradicting Ethyl's assertions relative to training efforts. The district court found that Ethyl's explanation rendered its conduct permissible under exception (b) to Article XI, and that the Union's evidence of pretext was insufficient. Inherent in the trial court's findings were several credibility calls. On appeal, the Union contends that the trial judge erred in finding Ethyl's evidence of an exception to the application of Article XI adequate, and in finding its evidence of pretext inadequate.

### Analysis

Sound limitations imposed on appellate review by Rule 52(a) of the Federal Rules of Civil Procedure preclude our acceptance of the Union's contentions. It is axiomatic that " 'credibility choices and the resolution of conflicting testimony are within the province of the court sitting without a jury, subject only to the clearly erroneous rule of Fed.R.Civ.P. 52(a).' " *City of New Orleans v. American Commercial Lines, Inc.,* 662 F.2d 1121, 1123 (5th Cir.1981) (quoting from *Rodriguez v. Jones,* 473 F.2d 599, 604 (5th Cir.), *cert. denied,* 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973)). A factual finding may be set aside under the clearly erroneous rule only if we are left, on review of the evidence, with the firm and definite conviction that a mistake has been committed. *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). We may not reject the trial judge's findings simply because we might have arrived at a different result on the same evidence. *Scott v. Moore,* 680 F.2d 979 (5th Cir.1982) (en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 442, 74 L.Ed.2d 599 (1982).

### Ethyl's Response

We cannot characterize as clearly erroneous the court's finding that Ethyl

utilized supervisors or salaried engineers in the sodium section to train the influx of unqualified individuals hired to replace experienced personnel who had secured more attractive employment in other divisions of the plant. Ample evidence supports the court's determination that because of a shortage of experienced personnel, Ethyl had encountered serious production problems in this section commencing in early April of 1979, at a time when the demand for sodium had suddenly increased. The few remaining experienced operators were unable to simultaneously train the new employees and maintain production levels. Various corrective measures attempted by the company were unsuccessful.

According to the testimony of several defense witnesses, Ethyl acted to halt the continuing deterioration of its sodium production system by temporarily transferring 21 salaried employees, either supervisors or engineers, to operate the unit and parallel train new or otherwise inexperienced employees.[2] According to this testimony, training was their principal function. The trial court credited the testimony of Ethyl's witnesses. We decline to disturb that judgment call on appeal.

*Pretext*

 To establish pretext, the Union offered testimony that the transferees lacked the qualifications needed to instruct the trainees, and that one supervisor made no effort to instruct an employee who, as it developed, had been working in the sodium section for six years. The Union is correct that while most of the supervisory transferees had no experience in the sodium section, all had either one or more degrees in chemical engineering or in a related discipline, or

extended experience in the manufacture of industrial sodium. All had been instructed on the sodium section's procedures before transfer.

The district court recognized the evidentiary conflicts, and concluded that the evidence of pretext was insufficient to overcome defendant's articulated explanation. We perceive no error approaching the clearly erroneous benchmark.

Finally, in response to the Union's suggestion that affirmance of the district court would lead to destruction of the integrity of the arbitration process and invite flagrant violations of the collective bargaining agreement, we cite the delicate balance of competing interests struck in our prior opinion. We embrace the insightful eloquence of Judge Goldberg. The Union's grievance in this instance must therefore be presented to an arbitrator.

The district court is AFFIRMED.

---

2. Louis Mitchell, the individual in charge of Ethyl's supervisor training program, explained the parallel training technique:

Typically, as far back as I can remember, at the Houston plant operators are trained by other operators to do what we call parallel training. One operator works with an experienced operator, and that operator trains him in how to do the job. That training includes talking to him, showing him, demonstrating. In addition to that, they both do the job together. As a matter of fact, in some

cases, one guy will do one piece of a job and another guy will do another piece of a job during the training period until the trainee is fully qualified to do the job. We didn't have, as I mentioned, sufficient qualified operators so that we could put a trainee with a qualified operator. So, we used these supervisors in the same manner that we would use an operator, training operator, excepting we didn't have sufficient operators. So, we used supervisors to parallel train.