Harold "D" AYERS, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 83-1678.

United States Court of Appeals, Fifth Circuit.

Jan. 17, 1985.

James A. Rolfe, U.S. Atty., Charles D. Cabaniss, Asst. U.S. Atty., Dallas, Tex., defendant-appellant.

Gibbins, Burrow & Bratton, Barham Bratton, Bob Gibbins, Yii-Chwen Pan, Austin, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, JOHNSON, and WILLIAMS, Circuit Judges.

JOHNSON, Circuit Judge:

The United States appeals from an adverse judgment finding the Government liable under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, for injuries Harold "D" Ayers suffered while he was being treated at the Dallas Veterans Administration Hospital in July of 1976. The Government argues that the evidence adduced at trial failed to establish the standard of care that applies to a licensed physician who is a four month resident in anesthesiology. The Government also argues that expert testimony failed to establish a breach of duty on the part of the resident. Finally, the Government argues that the negligence of the supervising anesthesiologist cannot be imputed to the United States because the supervising doctor was an independent contractor. Accordingly, the Government asserts, the judgment of the district court must be reversed because the evidence does not establish the liability of the United States. This Court finds that the record supports the district court's findings. The judgment of the district court is affirmed.

I. *Facts*

Harold "D" Ayers (Ayers) entered the Marine Corps following his graduation

from high school in 1956. While in the service, Ayers was involved in a car accident in 1967 that resulted in severe injuries to both of his legs. In 1972, Ayers was permanently retired from the military because he could not run the three miles necessary to pass a required physical examination. With the help of veterans' benefits, Ayers trained to be a barber. He pursued that career until it became apparent that his past leg injury prevented him from standing long hours. Again with the help of veterans' benefits, Ayers began training for a new career. He started college in order to obtain a bachelor's degree so that he could enroll in a seminary and pursue the ministry.

Ayers' problems with his legs continued. As a result, he entered the Veterans Administration Hospital (the V.A. Hospital) in Dallas, Texas, in July of 1976. On July 12, Ayers underwent an initial operation to drain the infection from one of his ankles. He was given a spinal anesthetic for that operation and recovered from the anesthesia without complications. The first operation was not completely successful, however. On July 14, 1976, he underwent an additional operation. It is the spinal anesthetic that Ayers received for this July 14, 1976, operation that underlies the allegations of medical malpractice in the instant case.

Dr. Chen, a licensed physician and a resident in his fourth month in the anesthesiology program at the V.A. Hospital, was assigned to administer the anesthesic for Ayers on July 14, 1976. Dr. Chen's supervising physician was Dr. Clarke, who was a board certified anesthesiologist provided to the hospital according to the terms of a contract between the hospital and the University of Texas (Southwestern) Medical School. When Ayers was taken into surgery on July 14, 1976, Dr. Chen attempted to administer the spinal anesthestic, but his attempt to introduce the needle into the desired location was unsuccessful. Dr. Clarke then obtained a successful spinal tap and administered twelve milligrams of tetracaine and some amount of epinephrine. Dr. Chen testified that at that time neither

he nor Dr. Clarke detected the onset of anesthesia. Believing that the anesthestic had not been introduced into the proper location, and after waiting a disputed length of time, Dr. Clarke administered a second dosage of tetracaine and a "drop" of epinephrine.

Immediately after this second injection of anesthetic, Ayers began experiencing difficulty breathing, and within minutes he ceased breathing. Normal breathing was restored within about fifteen minutes. Once breathing was restored, the surgery was performed. After the surgery, Ayers began suffering from muscle weakness below the waist, impotence, and incontinence. Ayers' problems continue to the date of trial; he is unable to walk more than short distances with a walker and he is confined to a wheelchair.

Ayers sued the United States under the Federal Tort Claims Act seeking damages for the injuries he suffered, alleging that Dr. Chen and Dr. Clarke negligently managed the administration of anesthetic on July 14, 1976. The case was tried to the court sitting without a jury and the district court entered judgment for Ayers. In its Findings of Fact and Conclusions of Law, the district court made several findings that are being challenged in this appeal. In pertinent part, the district court found:

(8) A physician of ordinary prudence and skill, practicing in the Dallas community or a similar community, would not have included Epinephrine in the second injection.

(9) [Ayers'] injury resulted from the inclusion of Epinephrine in the second injection of anesthetic administered on July 14, 1976.

(10) An anesthesiologist of ordinary prudence and skill should have anticipated the danger of including Epinephrine in the second injection.

(11) The management of the anesthesia on July 14, 1976 was negligent in that Epinephrine was given in both injections.

(12) Dr. Chen and Dr. Clarke were each responsible for the anesthesia manage-

ment on July 14, 1976 in that each doctor was assigned to [Ayers'] care and each was present during the procedure which caused injury. Each doctor had a duty to insure that Epinephrine was excluded from the second injection. Dr. Clarke breached this duty by including Epinephrine. Dr. Chen breached this duty by failing to call to Dr. Clarke's attention the danger of including Epinephrine.

Record Vol. 1 at 228. In its Conclusions of Law, the district court determined that the United States was not liable for the negligent acts of Dr. Clarke because Dr. Clarke was an employee of the University of Texas (Southwestern) Medical School, a private contractor. *Id.* at 230.

On appeal, the Government argues that under Texas law, which governs the instant Federal Tort Claims Act suit[1], the standard of care for a physician and the physician's breach of that standard must be demonstrated by expert testimony. The Government argues that the expert testimony presented to the court failed to establish the standard of care applicable to a resident in his fourth month of anesthesiology training. Moreover, the Government argues that the expert testimony at trial did not establish that Dr. Chen breached the appropriate standard of care. As a result, the Government argues, the evidence is insufficient to demonstrate that Dr. Chen was negligent on July 14, 1976. The Government urges that the district court's conclusion that Dr. Clarke is an independent contractor is correct. Accordingly, the Government argues, Ayers has failed to show the United States is liable for Ayers' injuries and the judgment

against the United States must be reversed.

Ayers argues that the evidence was sufficient to support the district court's factual determinations. Furthermore, Ayers argues that the district court's conclusion of law that Dr. Clarke was an independent contractor is erroneous, so that even if the evidence failed to prove Dr. Chen's negligence, the United States is still liable for the negligence of Dr. Clarke. Finally, Ayers contends that the district court erred in allowing the Government a set-off against the damage award for veterans' benefits paid in the past to Ayers, and veterans' benefits to be paid to Ayers in the future. We first address the sufficiency of the evidence to support the district court's factual findings.

## II. *The District Court's Factual Findings are not Clearly Erroneous*

Review of factual determinations by the district court is limited by the "clearly erroneous" standard of Fed.R.Civ.P. 52(a). This limited review recognizes the unique opportunity of the district court to make credibility choices and resolve conflicts in the evidence. "[U]nless an appellate court is left with the 'definite and firm conviction that a mistake has been committed,' it must accept the trial court's findings." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 855, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606 (1982) (citation omitted).[2]

The Government challenges two sets of factual findings. First, the Government challenges those findings of the district

1. Under the Federal Tort Claims Act, liability for medical malpractice is controlled by state law. *See United States v. Muniz,* 374 U.S. 150, 152–53, 83 S.Ct. 1850, 1852, 10 L.Ed.2d 805 (1963); *Edwards v. United States,* 519 F.2d 1137, 1139 (5th Cir.1975), *cert. denied,* 425 U.S. 972, 96 S.Ct. 2170, 48 L.Ed.2d 795 (1976).

2. The United States argues that this Court may apply a less deferential standard of review in the instant case. The Government relies on *Hicks v. United States,* 368 F.2d 626 (4th Cir. 1966), for the proposition that the district court's determination of negligence is freely re-

viewable because it involves the application of the law to the evidentiary facts. The rule in this Circuit is contrary to the rule urged by the Government. In *Sebree v. United States,* 567 F.2d 292 (5th Cir.1978), this Court stated that the appellate court may not set aside the district court's findings with respect to negligence or proximate cause unless it determines that the decision was clearly erroneous. *Sebree,* like the instant case, involved a suit for medical malpractice under the Federal Tort Claims Act. *Accord Rooney v. United States,* 634 F.2d 1238 (9th Cir.1980).

court that connect epinephrine to Ayers' injuries. The district court found that epinephrine was negligently included in the second anesthetic injection and that it was the proximate cause of Ayers' injuries. Second, the Government challenges the findings that Dr. Chen, the resident in anesthesiology, was negligent in his actions. This Court addresses the epinephrine findings first.

(a) *The Use of Epinephrine in the Second Injection*

█ The Government challenges the district court's findings that the epinephrine included in the second injection was the proximate cause of Ayers' injuries and that it was negligent to administer the second injection. Under Texas law

[A] patient has no cause of action against his doctor for malpractice, ... unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries.

*Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779, 782 (1949).

█ Dr. Gray and Dr. Moore, two of Ayers' expert witnesses, testified concerning the use of epinephrine in the second injection. Dr. Gray testified:

Subsequent to that administration of the medicine, either one of two things happened. Either Dr. Clarke did not wait long enough for the spinal anesthetic medicines to have their appropriate effect or, in his evaluation of that effect, missed the fact that he had the beginnings of a spinal anesthetic.

The second dose of the spinal anesthetic, which was identical to the first, was another error. The dosage should have been markedly reduced to probably at least half of the dose of the tetracaine, and *the epinephrine should have been omitted.*

I think that these two factors, ... the short time interval and the lack of demonstration of the spinal before the second was given and then the reduplication of the dosage led to the complications.

.    .    .    .    .

But the physiologic occurrences that are the result of a spinal—total spinal anesthetic,[3] I think, contributed to the long-term neurologic problems of Mr. Ayers from several standpoints. Total spinal anesthesia is manifest[ed] by a marked reduction in the cardiac output resulting in, for instance, the loss of consciousness and the inability to breathe. This would also imply a decrease in blood flow, not only to the brain, but probably also to the spinal cord.

*This in combination with a local ischemic [4] process which is occurring due to the administration of a now double dose of epinephrine ... caused a significant degree of local ischemia and the resultant cauda equina [5] syndrome.*

.    .    .    .    .

I think this combination of a *decreased input of oxygenated blood to the spinal cord plus the local constriction of the blood vessels caused by the epinephrine caused a hypoxic [6] condition in the spinal cord which then led to the syndrome which is called ... the cauda equina syndrome,* which resulted in this man's partial loss of bladder and bowel

---

3. In very simplistic terms, the result of a total spinal anesthesia is the blocking of all senses below the neck and the cessation of breathing. The total spinal anesthesia was a complication in the instant case because it was unexpected and unintended.

4. An ischemic process, simply put, is one which obstructs the inflow of arterial blood. Webster's Third New International Dictionary 1197 (4th ed. 1976).

5. The cauda equina are the roots of the upper sacral nerves which are of great length because the spinal cord does not extend beyond the first lumbar vertebra and which form a bundle of filaments within the spinal canal. Webster's, *supra*, at 355.

6. An hypoxic condition, in simple terms, is a condition where inadequate oxygen reaches the body tissues. Webster's, *supra*, at 1117.

control, impotence and weakness in his lower extremities.

Deposition of Dr. Gray at 18–21 (emphasis added).

Dr. Moore, another one of Ayers' expert witnesses, testified:

Epinephrine is placed in a solution to be injected into the subaracnoid space to prolong the duration of the Tetracaine. In this specific instance, I suspect it was a matter of decision. *But there was really no reason to use the Epinephrine for extremity surgery which was calculated to probably last no longer than an hour, an hour and 15 minutes.*

The first spinal, as you will recall, was given without Epinephrine, and no problem. [Referring to the July 12, 1976, operation.] *This one was given with Epinephrine, both doses.* And while I use Epinephrine almost 100 percent of the time in procedures where I believe that the surgery is going to last or could last for over an hour—and—a—half and have had absolutely no problems with it, *whether it was indicated or not in this instance is questionable.*

Deposition of Dr. Moore at 17 (emphasis added). Later in his deposition Dr. Moore stated, "The next dose should not have contained Epinephrine." Deposition of Dr. Moore at 29.

■ From the testimony of both Dr. Gray and Dr. Moore, there was ample evidence for the court to conclude that the epinephrine caused Ayers' injuries. Moreover, Dr. Gray testified that such a result was foreseeable. Deposition of Dr. Gray at 41. Ayers successfully demonstrated both actual cause and foreseeability, the prerequisites of a finding of proximate cause under Texas law. *See Speer v. United States,* 512 F.Supp. 670 (N.D.Tex.1981), *aff'd.,* 675 F.2d 100 (5th Cir.1982). The expert testimony need only show that the negligence was *a* proximate cause of the injuries, not that it was the *sole* proximate cause. *Luna v. Nering,* 426 F.2d 95, 98 (5th Cir.1970); *Bender v. Dingwerth,* 425 F.2d 378 (5th Cir.1970). Ayers met this burden. Furthermore, this Court also notes that there is ample evidence to conclude that the failure by both Dr. Clarke and Dr. Chen to detect the onset of anesthesia from the initial injection precipitated the giving of the second injection.

Not only does the record support the finding that epinephrine proximately caused Ayers' injuries, the record amply supports the conclusion that it was negligent to include epinephrine in the second injection. Dr. Gray testified:

Q: Do you have an opinion, based on reasonable medical probability, as to whether or not the administration of the second dose of anesthetic and epinephrine that you've testified to was substandard? Do you have an opinion?

Dr. Gray: Yes, sir.

Q: And will you tell us—tell the judge what that opinion is?

Dr. Gray: I think the administration of the second dosage was, number one, probably unnecessary at all, and number two, exceeded what would be a reasonable dose of the tetracaine and, number three, *contained epinephrine which was not needed.*

Q: And for those reasons do you have an opinion as to whether it was or was not substandard?

Dr. Gray: I think that its administration and *its ingredient balance, that second dose was substandard.*

Deposition of Dr. Gray at 39–40.

■ The Government argues that factual assumptions underlying the hypothetical questions posed to Ayers' experts were never demonstrated at trial and, therefore, the answers to the questions were irrelevant in the instant case. *See Southwest Texas Methodist Hospital v. Mills,* 535 S.W.2d 27, 31 (Tex.Civ.App.—Tyler, 1976, writ ref'd n.r.e.). The Government asserts that Ayers was not a basically healthy individual at the time of his surgery, with the exception of his problem with his leg, as the hypothetical questions assumed. The Government argues that Ayers was a very ill man, and that a pro-

gression of his illness caused his present problems. The district court was presented with this theory of the case urged by the Government and rejected it; therefore, Ayers adequately demonstrated the factual basis for the hypothetical questions.

In rejecting the Government's arguments, the district court had before it the depositions of Ayers' expert witnesses, as well as the deposition of the Government's expert witness. In addition, the district court received testimony at the trial of the case. The resolution of conflicting testimony and the making of credibility choices are within the province of the court sitting without a jury, subject only to the clearly erroneous standard. *Oil, Chemical, and Atomic Workers International Union v. Ethyl Corp.*, 703 F.2d 933 (5th Cir.1983). Here, the Government has the burden of proving a mistake has been made in the fact findings of the district court, and this burden is not met merely by demonstrating conflicts in the expert testimony, nor by seeking to redetermine the credibility of the expert witnesses. *See Sawyer v. Arum*, 690 F.2d 590 (6th Cir.1982).

### (b) *Dr. Chen's Negligence*

■ The district court found that both Dr. Chen and Dr. Clarke were responsible for the management of Ayers' anesthesia on July 14, 1976. The court found Dr. Clarke was negligent in administering the second dosage of epinephrine, and Dr. Chen was negligent in not calling Dr. Clarke's attention to the danger inherent in the second dosage of epinephrine. The Government argues that Ayers failed to adduce adequate expert testimony to support the court's finding that Dr. Chen was negligent. Specifically, the Government argues that Ayers' experts failed to establish the standard of care to which Dr. Chen must adhere, and that they also failed to establish that Dr. Chen's actions were substandard. Because of this alleged lack of expert testimony, the Government argues that the findings pertaining to Dr. Chen's negligence are clearly erroneous. This Court finds that the record supports the conclusion that Dr. Chen negligently managed Ayers' anesthesia.

This Court has addressed the requirements under Texas law necessary to demonstrate medical malpractice.

Texas requires that the testimony of a doctor of the same school of medicine as the defendant must prove every medical fact necessary to show (1) that the doctor was negligent and (2) that the negligence was a proximate cause of the patient's injury. The only modifiers pertinent here are (a) *such proof does not have to show that the doctor's negligence was the sole proximate cause, although it must show that it was a proximate cause; (b) the defendant doctor's own testimony can comprise the necessary medical proof;* and (c) when the negligence is of such a nature as to be obvious to a layman, medical proof is excused.

*Luna,* 426 F.2d at 98 (emphasis added).

The second dosage of anesthetic containing epinephrine would not have been given if the doctors had realized that the first injection of anesthetic was taking effect. Sometimes there is a delay in the onset of anesthesia. Dr. Jenkins, the defense expert, and the former Chairman of the Department of Anesthesiology at the University of Texas (Southwestern) Medical School, testified that there could be a delay in the onset of anesthesia. Record Vol. 2 at 176. Dr. Chen, the resident, acknowledged that he knew the procedures for checking for the onset of anesthesia. Record Vol. 2 at 53. Dr. Chen was a licensed physician who had four months of experience in the anesthesiology residency program at the V.A. Hospital. Dr. Chen was experienced enough to know that there could be a delay in the onset of the anesthesia.

Had Dr. Chen caught the delay in the onset of the initial injection of anesthetic, the second injection would not have been given. As we have noted, a doctor's malpractice can be established by his own testimony. *Williams v. Bennett,* 610 S.W.2d 144 (Tex.1980). Dr. Chen admitted at trial

that both he and Dr. Clarke were checking for the onset of anesthesia. At trial Dr. Chen stated:

Q: Now, you were there throughout the procedure?

Dr. Chen: Yes, sir.

Q: And you were helping to monitor the signs—

Dr. Chen: Yes, sir.

Q: —of whether or not the anesthesia was taking effect; is that right? You were helping to monitor Mr. Ayers?

Dr. Chen: Yes. Yes, sir.

Record Vol. 2 at 53. Moreover, Dr. Chen acknowledged that he would know whether the anesthetic was taking effect. Both doctors present, however, missed the onset of anesthesia. Consequently, the second dosage was given.

In addition, Dr. Gaines, Associate Professor of Clinical Anesthesiology at the University of Texas (Southwestern) Medical School and Director of the Anesthesiology Section at the V.A. Hospital, described the responsibilities of anesthesiology residents at the V.A. Hospital. Dr. Gaines testified that the resident makes the initial contact with the patient, does the pertinent physical examination, takes the pertinent history as it relates to anesthesiology, and explains the risks and benefits to the patient. Once the patient comes to the operating room, the "resident would perform the actual anesthesia management." Record Vol. 2 at 104. Only if the resident had difficulty performing the anesthesia, would the supervising doctor step in and do the procedure himself. As Dr. Gaines stated, the role of the supervisor is to "get the resident back on the right track." Record Vol. 2 at 107.

■ The reviewing court must consider all reasonable inferences from the evidence which support the challenged findings. *Mack v. Newton,* 737 F.2d 1343, 1350 (5th

Cir.1984); *Pope v. Rollins Protective Services Co.,* 703 F.2d 197 (5th Cir.1983). Dr. Gaines testified that the resident is primarily responsible for anesthesia management. The resident is not relieved of this responsibility to the patient, merely because the faculty supervisor steps in and demonstrates a proper technique. It was reasonable for the district court to infer that once the supervising doctor becomes actively involved in the anesthesia management, both doctors are then responsible for the anesthesia management, including the proper ingredient mix. Therefore, it was not erroneous for the district court to conclude that Dr. Chen was negligent because he failed to call to Dr. Clarke's attention an error in the ingredient mix.[7] It was also not erroneous to conclude that Dr. Chen's negligence was *a* proximate cause, although not the sole proximate cause, of Ayers' injuries.

■ From the testimony of Dr. Gaines and Dr. Chen, this Court concludes that the record adequately supports the district court's conclusion that Dr. Chen was negligent. The findings of the district court need not be supported by conclusive evidence. *Affholder, Inc. v. Southern Rock, Inc.,* 736 F.2d 1007 (5th Cir.1984). Moreover, it is not the role of the Court of Appeals to second guess the district court's credibility choices among differing pieces of testimony, even those coming from the same witness or witnesses, unless the Court of Appeals is left with the definite and firm conviction that a mistake has been committed. *Macpherson v. Texas Department of Water Resources,* 734 F.2d 1103, 1105 (5th Cir.1984). This Court is not left with the definite and firm conviction that a mistake has been committed, and we hold that the district court's findings are not clearly erroneous. Because the parties stipulated that Dr. Chen was an employee of the V.A. Hospital at all times pertinent

---

7. This case is distinguishable from those cases cited by Ayers that impose a duty on an employee of a hospital to point out errors of care to the physician or other supervisor in charge. Dr. Clarke and Dr. Chen each bore equal responsibility to see that the anesthetic was properly administered in the instant case. Therefore, this Court does not reach the issue of whether a subordinate employee has a duty to challenge substandard care of a patient where the employee's individual responsibilities do not include that care.

to this case, the United States is liable for Dr. Chen's negligence under the Federal Tort Claims Act.[8]

### III. *The District Court's Set-off Against Damages Awarded to the Plaintiff is Not Reviewable*

Ayers asserts that the district court erroneously allowed the United States a set-off against the damages awarded Ayers. The district court set off against Ayers' damage award veterans' disability payments already paid to Ayers and also set off benefits that Ayers will receive in the future. This Court is unable to address the merits of Ayers' challenge because Ayers failed to file a cross-appeal.

The classic rule stating when a cross-appeal must be filed appears in *United States v. American Railway Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 564, 66 L.Ed. 1087 (1924):

> [A] party who does not appeal from a final decree of the trial court cannot be heard in opposition thereto when the case is brought here by the appeal of the adverse party. In other words, the appellee may not attack the decree with the view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below. But it is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.

This Court has followed this view on numerous occasions. *See, e.g., United States v. Central Gulf Lines, Inc.,* 699 F.2d 243, 248 (5th Cir.1983); *Robicheaux v. Radcliff Material, Inc.,* 697 F.2d 662, 668 (5th Cir. 1983); *Alford v. City of Lubbock,* 664 F.2d 1263, 1272–73 (5th Cir.), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 848 (1982).

Ayers' challenge to the set-off against the damage award clearly attempts to enlarge his rights under the district court's judgment. As such, a cross-appeal is necessary to pursue the challenge and Ayers' failure to file a cross-appeal pursuant to Fed.R.App.P. (4)(a)(3) precludes consideration of his claim.

### IV. *Conclusion*

The district court's findings of fact are not clearly erroneous. Because the record supports the finding that Dr. Chen was negligent, and because the parties stipulated that Dr. Chen was an employee of the V.A. Hospital at all times relevant to this action, the judgment of the district court is affirmed without reaching the issue of whether Dr. Clarke was an independent contractor or an employee of the hospital. Finally, Ayers' failure to file a cross-appeal precludes his attack on the district court's damage award. The judgment of the district court is

AFFIRMED.

---

8. Because we uphold the finding that Dr. Chen was negligent, we need not reach the issue of whether Dr. Clarke was an employee of the United States or an independent contractor.