# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 11, 2022

Lyle W. Cayce
Clerk

No. 21-50149

Denice Lee, as next friend JS, a toddler,

*Plaintiff—Appellant*,

*versus*

United States of America,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:18-CV-605

Before Owen, *Chief Judge*, and Higginbotham and Elrod, *Circuit Judges*.

Per Curiam:*

This is a medical malpractice case brought under the Federal Tort Claims Act (FTCA). Denice Lee Lopez claims that Dr. Richard Switzer breached his duty of care to toddler J.S. causing J.S. significant vision loss.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-50149

Because the district court did not clearly err in failing to find the requisite causation, we affirm.

## I

J.S. was born on December 2, 2015 to Lopez and Kendall L. Smith. During her pregnancy, Lopez received prenatal care through CommuniCare S.A. CommuniCare is a private health center with a campus in San Antonio. At all times relevant to this case, CommuniCare received federal funds under the Federally Supported Health Centers Assistance Act of 1992. CommuniCare employees are considered federal employees for purposes of the FTCA.[1]

Smith has a heritable form of retinoblastoma (RB), and one of his eyes was removed due to RB. If a parent has RB, the child should be immediately referred to a specialist. A child with a family history of RB has an approximately fifty percent chance of developing RB tumors. RB tumors damage the retina and cause vision loss. CommuniCare was aware of the family history of RB.

Dr. Switzer is a pediatrician employed by CommuniCare. On December 3, 2015, Dr. Switzer conducted his first physical examination of J.S. while J.S. was still in the hospital. During pediatric medical appointments, physicians routinely conduct red reflex tests. These tests can detect irregularities in the retina, which may indicate RB. The red reflex test is currently the only non-invasive test that is widely available, though physicians largely agree that it is unreliable. Dr. Switzer performed a red reflex test on J.S., and the result was normal.

---

[1] *See* 28 U.S.C. § 1346(b)(1).

J.S. saw Dr. Switzer again on December 11, 2015. Both parents testified that they presented their concerns about J.S.'s eyes to Dr. Switzer, who said it was common for babies to have weak eye muscles at this age. Dr. Switzer again performed a red reflex test, and the result was again normal.

J.S. next saw Dr. Switzer on December 16, 2015. Smith testified that he voiced concerns about J.S.'s eyes and Dr. Switzer again stated that the issues were likely just from a weak eye muscle. Dr. Switzer performed another red reflex exam, and the result was again normal.

J.S.'s next pediatric appointment was on February 10, 2016, this time performed by pediatric nurse practitioner, Lisa Jamison. J.S.'s red reflex test result was normal once again. J.S. was not referred to a specialist at this time. Between J.S.'s December and February appointments, J.S.'s left eye appeared to get worse.

On April 15, 2016, J.S. was seen by pediatrician Dr. Patricia Hughes-Juarez. The medical records again indicated a normal red reflex, although Lopez testified that Dr. Hughes-Juarez "noticed something" in J.S.'s eyes. Based on J.S.'s examination and family history, Dr. Hughes-Juarez referred J.S. to an RB specialist, Dr. Amy Schefler.

Dr. Schefler diagnosed J.S. with bilateral RB. A common classification system for grading RB tumors is on a scale of A (the smallest tumors) to E (the largest ones). Dr. Schefler classified J.S.'s tumors as group C. The RB was in the center of J.S.'s left eye, but the tumors had not yet reached the center of J.S.'s right eye. Dr. Schefler started treatment immediately. J.S. responded well to treatment. However, because of the location of the tumor in J.S.'s left eye, his macula and corresponding central vision have been irrevocably damaged. The tumors in J.S.'s right eye caused a significant blind spot.

Lopez filed suit against the United States under the FTCA alleging that Dr. Switzer was negligent in failing to refer J.S. for an ophthalmologic examination as soon as practicable after birth. She contends that had J.S.'s tumors been treated earlier, the outcome would have been better. At the bench trial, Lopez called Dr. David Plager and the United States called Dr. George Magrath to testify on issues of liability.

Following the trial, the district court determined that the United States breached the standard of care when Dr. Switzer failed to refer J.S. to a pediatric ophthalmologist given the family history of RB. But the district court concluded that "[b]ecause Plaintiff could not establish through expert testimony to a reasonable degree of medical probability (1) when J.S.'s RB tumors developed or (2) an established growth rate for RB tumors, it is impossible to tell from the medical evidence whether the delay in diagnosis exacerbated the damage to J.S.'s vision. . . . Plaintiff did not establish that it is more likely than not that earlier detection of J.S.'s retinoblastoma would have improved his outcome."

## II

On appeal from a bench trial, "findings of fact are reviewed for clear error and legal issues are reviewed de novo."[2] "Questions concerning the existence of negligence and causation are treated as factual issues subject to the clearly erroneous standard."[3] The district court has committed clear error when we are "left with the definite and firm conviction that a mistake

---

[2] *Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 326 (5th Cir. 2020) (per curiam) (quoting *Barto v. Shore Constr., LLC*, 801 F.3d 465, 471 (5th Cir. 2015)).

[3] *In re Luhr Bros. Inc.*, 325 F.3d 681, 684 (5th Cir. 2003) (quoting *Avondale Indus. v. Int'l Marine Carriers, Inc.*, 15 F.3d 489, 492 (5th Cir. 1994)).

has been committed."[4]  "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."[5]

Because "[u]nder the Federal Tort Claims Act, liability for medical malpractice is controlled by state law,"[6] we look to Texas law.  A plaintiff alleging medical malpractice under Texas law must prove: "(1) a duty by the physician or hospital to act according to an applicable standard of care; (2) a breach of that standard of care; (3) an injury, and (4) a causal connection between the breach of care and the injury."[7]  "[E]xpert evidence is required to show both a breach of a standard of care and that the breach was a proximate cause of the harm suffered."[8]

The district court determined, and the parties agree, that Dr. Switzer breached his duty of care by not immediately referring J.S. to a pediatric ophthalmologist.  The pertinent inquiry then focuses on causation.  In order to prove causation, plaintiffs "must show a 'reasonable medical probability' that 'their injuries were caused by the negligence of one or more defendants.' This 'mean[s] simply that it is more likely than not that the ultimate harm or condition resulted from such negligence.'"[9]

---

[4] *Bertucci Contracting Corp. v. M/V Antwerpen*, 465 F.3d 254, 258-59 (5th Cir. 2014) (quoting *Walker v. Braus*, 995 F.2d 77, 80 (5th Cir. 1993)).

[5] *In re Luhr Bros.*, 325 F.3d at 684 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)).

[6] *Ayers v. United States*, 750 F.2d 449, 452 n.1 (5th Cir. 1985).

[7] *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003).

[8] *Guile v. United States*, 422 F.3d 221, 225 (5th Cir. 2005).

[9] *Young v. Mem'l Hermann Hosp. Sys.*, 573 F.3d 233, 235 (5th Cir. 2009) (per curiam) (quoting *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 399-400 (Tex. 1993)).

No. 21-50149

Evidence in the record reflected that even with prompt treatment, RB tumors necessarily cause damage to the retina.  Lopez therefore needed to show that J.S.'s vision loss was *exacerbated* as a result of the delay in treatment.[10]  Plaintiffs must differentiate between what injury would have occurred regardless of breach and what injury occurred as a result of the breach.[11]  "[W]hile it may be facially appealing to infer additional pain and suffering resulted from the alleged delay in diagnosis, the trial court is not permitted to rely on such speculation."[12]

Lopez failed "to provide any baseline from which the trial court could conclude the delay caused the results."[13]  Lopez argues that the "baseline" in this case is the red reflex test.  She contends that the red reflex test does not return a normal result if a child has RB in the center of the eye.  Therefore, she concludes, J.S.'s central vision was not yet damaged when Dr. Switzer and Nurse Jamison examined him and when he should have been referred to a specialist.  However, Lopez concedes that Dr. Hughes-Juarez also recorded a normal red reflex test before referring J.S. to a specialist.  Because the red reflex test returned a normal result even when the tumor was allegedly impeding J.S.'s central vision, it is hard to understand how the red reflex test could provide a baseline in this case.  Even assuming it is a close

---

[10] *Cf. Tenet Hosps. Ltd. v. Bernal*, 482 S.W.3d 165, 170 (Tex. App.—El Paso 2015, no pet.) ("Any recovery for pain and suffering in a medical malpractice case is limited to the additional pain and suffering caused by the improper medical treatment.").

[11] *See Jones v. King*, 255 S.W.3d 156, 159-60 (Tex. App.—San Antonio 2008, pet. denied); *see also Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 840 (Tex. 1997) ("[A] plaintiff should recover only for medical expenses specifically shown to result from treatment made necessary by the negligent acts or omissions of the defendant, where such a differentiation is possible.").

[12] *Jones*, 255 S.W.3d at 160.

[13] *See id.*; *see also Murdock*, 946 S.W.2d at 840 (concluding that there was no evidence that linked the complained-of conduct to any dollar amount of medical expenses).

No. 21-50149

call whether the red reflex test could provide a baseline, this court will not reverse a close call on clear error review.[14]

Additionally, the medical experts could not predict to a reasonable degree of medical probability when an RB tumor will form, nor could they estimate how long an already-formed tumor had been growing. Even if a child has the RB gene, doctors still need to wait for a tumor to form to perform treatment, and no test can predict whether a tumor will indeed form. In the absence of evidence attesting to harm from the delay, the district court could not infer a causal link.[15]

It is unclear what additional pain and suffering J.S. suffered as a result of Dr. Switzer's breach.[16] Although there was conflicting evidence, the district court's finding is "plausible in light of the record as a whole."[17] We therefore decline to find clear error.

---

[14] *See Bertucci Contracting Corp. v. M/V Antwerpen*, 465 F.3d 254, 258-59 (5th Cir. 2014) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

[15] *See Tenet Hosps. Ltd. v. Bernal*, 482 S.W.3d 165, 171 (Tex. App.—El Paso 2015, no pet.) ("[W]e cannot infer causation . . . by filling in missing gaps.").

[16] *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 246 (Tex. 2008) ("Proximate cause cannot be satisfied by mere conjecture, guess, or speculation.").

[17] *See Seahawk Liquidating Tr. v. Certain Underwriters at Lloyds London*, 810 F.3d 986, 990 (5th Cir. 2016) (quoting *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 376-77 (5th Cir. 2012) ("[O]ur court may not find clear error if the district court's finding is plausible in light of the record as a whole, even if this court would have weighed the evidence differently."); *Ayers v. United States*, 750 F.2d 449, 456 (5th Cir. 1985) ("[I]t is not the role of the Court of Appeals to second guess the district court's credibility choices among differing pieces of testimony, even those coming from the same witness or witnesses, unless the Court of Appeals is left with the definite and firm conviction that a mistake has been committed.").

No. 21-50149

*     *     *

The judgment of the district court is AFFIRMED.